JOHN H. DUVALL ET AL.

vs.                             DECEMBER TERM, 1847.

JOHN COALE.

[FRAUD.]

A PARTY who attempts to protect himself from the consequences of an engage-
ment into which he has entered, upon the plea, that he has been imposed upon,
must make out the imposition by proof.

Fraud is not to be presumed, and though it may not be necessary to prove it by
direct and positive testimony, yet, the circumstances upon which the pre-
sumption of its existence is to be founded, should lead plainly and directly,
and by strong implication, to that conclusion.

Deliberate settlements and solemn instruments are not to be impeached and
overthrown by light and trivial circumstances, which, at most, furnish a
foundation for ingenious minds to speculate upon, and to weave plausible
theories of unfairness in the transaction with which they are associated.

[John Coale, of Howard district, having been indebted to
Beale Duvall, in the sum of $1187 55, executed to him a bill
of sale of certain personal property, dated 27th November,
1824, to secure its payment. According to the allegations of
the bill, the debt was, on the 8th of January, 1834, reduced to
the sum of $742 29 ; and on the 28th of October, following,
Coale mortgaged certain real estate in Howard district, to Du-
vall, to secure the payment of the balance, in three annual in-
stallments, with interest; the last installment being due on the
28th October, 1837. The bill also stated, that said Duvall,
had been long since dead, and that John H. Duvall and William
B. Duvall, two of the complainants, were his administrators;
that Coale had made but two small payments on the mortgage,
one of $65, on the 27th September, 1841, and the other of
$214 49, on the 21st February, 1842 ; the balance, with inter-
est, being still due ; and that the mortgage was afterwards as-
signed by said administrators, for a valuable and bona fide con-
sideration, to Thomas John Bowie, the other complainant. The
defendant, Coale, admitted in his answer, that he had signed the
mortgage in question ; but, stated that he knew nothing of its
contents, save as they were afforded him by Duvall, who pro-

fessed to read it to him. That he had placed implicit confidence in Duvall, and believed he had read the mortgage to him correctly; but was sure he did not, if the description of it given by the complainants was correct; that he was under the impression, that the balance due at the time of the settlement was only two or three hundred dollars; and that this had been satisfied by the subsequent payments admitted in the bill. The defendant demanded a production of the mortgage, and a proof of the assignment to Bowie, and of the grant of letters of administration to the other complainants. A commission was subsequently issued to take testimony, and certain proof, both oral and documentary, taken under it; the character and effect of which will sufficiently appear in the opinion of the Chancellor, delivered on exceptions by the defendant, to the report of the Auditor, which allowed the debt as stated in the bill.

THE CHANCELLOR:

I have read the evidence carefully, and given due consideration to the circumstances and combination of circumstances upon which the defendant rests his first exception, founded upon the allegation, that the mortgage was obtained from the defendant by fraud and imposition; and cannot think that the conclusion fairly to be formed, from a view of the whole transaction, is such, as the defendant seeks to establish.

It is well established, that he who attempts to protect himself from the consequences of an engagement, into which he has entered, upon the plea that he has been imposed upon, must make out the imposition by proof. Fraud is not to be presumed, and though it may not be necessary to prove it by direct and positive testimony, yet the circumstances upon which the presumption of its existence is to be founded, should lead plainly and directly, and by strong implication, to that conclusion.

Surely, deliberate settlements, and solemn instruments, are not to be impeached and overthrown by light and trivial circumstances, which at most furnish a foundation for ingenious

minds to speculate upon, and to weave plausible theories of unfairness in the transaction with which they are associated.

It is true, it is shown in this case, that the defendant cannot read manuscript, and that, therefore, he could not have himself have examined and understood the settlement of January, 1834, which was the basis of the mortgage of the following October; but, then it is in evidence, that that settlement was made in the presence of the defendant, who could both read and write, and who seems, from his proof, to have been quite familiar with his business.

Looking to that settlement, and comparing it with the other papers produced by the defendant, and seeing that to a great extent its fairness is corroborated by those papers; and in view also of the vague and indefinite character of the parol evidence relied upon to show that the defendant was not allowed all the credits to which he is said to have been entitled, I do not consider myself warranted in saying, that fraud was practiced in that settlement. But supposing the circumstances of suspicion were more pregnant, than they present themselves to my mind, there are other facts appearing in the case, which would go far to repel the presumption of fraud.

The settlement does not appear to have been made in private, with no persons present but the parties themselves, but, as is shown by the proof, in the presence of a witness, who could both read and write, and who seems from his own declarations to have been quite familiar with the dealings between the parties. There is, besides, another circumstance, which is well calculated to rebut the presumption that any thing unfair was contemplated by Beale Duvall.

The settlement in which the fraud is said to have been committed, was made on the 8th of January, 1834, and the mortgage only charged to be fraudulent, because founded upon that settlement, was not executed until the 28th October following, upwards of nine months afterwards.

During all this interval the settlement was open to examination by any person whom the defendant might ask to perform that office for him, Duvall having given him a copy of it in his

own hand-writing, which appears from the evidence to have been well known to the defendant's witness, who was also present when it was made.

It seems difficult to suppose that a party designing to perpetrate a fraud upon one who could not read, would have placed in his hands the ready means of detection and exposure, which are here exhibited. Surely this willingness of Duvall, thus manifested that the settlement should undergo revision and examination, goes far to relieve the transaction from the appearance of suspicion which, I think upon insufficient grounds, the defendant's counsel has attempted to throw around it.

I do not, therefore, think that the mortgage can be pronounced fraudulent, and therefore void; nor upon collating the settlement with the receipts produced by the defendant, and in view likewise of the parol proof, can my mind be brought to the conclusion, that the defendant is entitled to any additional credits.

There is, however, in my opinion, one correction to be made of the settlement of January, 1834, and that is, in regard to the mode in which the interest was calculated on the debt secured by the mortgage of the 27th November, 1824.

According to the settlement, the interest was charged upon the entire debt, and the several payments applied, first, to pay the interest thus charged, and then to the extinguishment of the principal. This mode of stating the account was, I think, wrong, and must be corrected. Upon examining the mortgage, it will be found that the debt was payable by installments, and that each installment was to be paid at the stipulated period, with interest on that installment, and not on the entire debt, and, therefore, the mode adopted when the settlement was made of charging interest on the whole debt, and applying no part of the respective payments to the reduction of the principal, until the interest on the whole was first paid, was against the terms of the contract, and erroneous.

But as I am fully satisfied, this was the result of inadvertence or of ignorance of the operation of the provisions of the deed, it cannot have the effect of impairing the invalidity of

the last mortgage, except to the amount to which the erroneous modes of calculation may have swelled the sum secured by it.

I do not think the last exception taken by the defendant to the statement of the auditor can be maintained. The entire mortgaged premises, and the sum intended to be secured by the mortgage are assigned, and as between the mortgagor and the assignee, I am not aware of any principle which will enable the former to make such an objection to the payment of the entire debt.

It is, thereupon, ordered, this 24th day of January, 1848, that this case be, and the same is hereby again referred to the Auditor, with directions to state another account for the purpose of ascertaining the amount due upon the mortgage in the proceedings mentioned, from the defendant to the late Beale Duvall, executed on the 28th of October, 1834, in which account such corrections shall be made of the settlement, marked exhibit No. 2, as shall make it conform to the views herein expressed, and the amount to appearing to be due with interest thereon from the date of the settlement, to the date of the mortgage, shall be taken as the sum secured by the latter, and the basis of the account now to be stated. All exceptions at variance with this order are overruled.

[No appeal was taken from this order.]