(Decided April 1st, 1897).

---

PETER W. SHAFER *vs.* MARTIN T. SHAFER ET AL.

*Executors and Administrators—Reopening Accounts—Improper Allowance of Claim—Burden of Proof—Releases to Executor— Debts Returned as Desperate.*

After a claim of an executor against the estate was passed by the Orphans' Court, paid to himself by the executor, and an account in which it was allowed was also passed, the legatees disputed the correctness of the claim and petitioned the Court to reopen the account and reject the same. *Held*, that the burden of proof was upon the petitioners to show that the claim was improperly allowed, and that the executor need offer no further evidence to sustain it.

An executor stated an administration account in which certain claims of his own against the estate were allowed, after having been passed by the Orphans' Court and paid. Distribution was made after notice to the legatees to be present in Court, under Code, Art. 93, secs. 138, etc. At that time the account so stated was open to inspection and the legatees upon receipt of the amounts audited to them, executed releases under seal to the executor in which they discharged him from all claims on account of said settlement. Afterwards some of the legatees petitioned the Orphans' Court to reopen the account and reject the claims of the executor against the estate, alleging that

they did not know that such claims were allowed in the account and that the same were not just debts. No evidence was offered by the petitioners to show that the claims were not valid. *Held*, that under these circumstances the releases executed by the petitioners are a bar to their obtaining the relief asked for.

The Orphans' Court is without jurisdiction to determine the validity of releases made to an executor by distributees of the estate, upon the payment to them of the amounts stated in a distribution account.

Where an executor has returned a debt due the estate as "desperate," the Orphans' Court cannot order that the debt be returned collectible and charged against the executor, unless there be sufficient evidence that the debt can be collected.

Appeal from two orders of the Orphans' Court of Frederick County.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*Wm. P. Maulsby* and *John S. Newman* (with whom was *Charles W. Ross* on the brief), for the appellant.

*John C. Motter* and *Glenn H. Worthington*, for the appellees.

ROBERTS, J., delivered the opinion of the Court.

Peter Shafer, Sr., late of Frederick County, in this State, died in the month of July, 1895, leaving a last will and testament, which has been duly admitted to probate in the Orphans' Court of said county, and letters testamentary thereon were by said Court granted to Peter W. Shafer, the executor therein named, who has accepted the trust and in due course of administration has passed his first account in said Court. After the settlement of said account, certain of the distributees under the said will, who are the appellees here, filed their petition in said Court alleging certain errors in said account and asking that the same be corrected. Upon this petition the Court passed an order requiring the appellant to answer the same and reserving the questions raised by said petition until the presentation of the

appellant's final account as executor. The appellant filed his answer within the time required by said order, admitting certain facts as stated in said petition and denying almost every material allegation contained therein. General replication was filed and testimony taken against the protest of the appellant. Whereupon the Court below passed an order, concurred in by two of the Judges, rescinding and annuling the order approving and passing the first account of the appellant, as executor, so far as it relates to the allowance of the appellee's claim for the sum of $1,000, for services rendered the testator in his lifetime and the sum of $150 paid for professional services claimed by the appellant to have been rendered the estate in the settlement thereof. All three Judges concurred in the passage of an order charging the executor with the sum of $745, being the amount claimed to be due from the executor's daughter, Eva L. Shafer, which he had returned as "desperate."

As to the first item of $1,000, the same having been regularly proven and passed by the Court below on the 7th of November, 1895, and endorsed, "Will pass when paid," the same was thereupon entered upon the "Claims Docket" of said Court and allowed in said first account. On the 27th of November, 1895, the appellant, acting in pursuance of an order of said Court, gave the usual notice to the legatees and distributees under said will by publishing the same in the "Daily News," a newspaper published in Frederick County, for two successive weeks prior to the day named, that a meeting would be held under the direction and control of said Court at the office of the Register of Wills of Frederick County, at 10 o'clock, A. M., on said day, for the payment of all legacies, and for distribution among the residuary legatees of the balance due them under said will. The two other claims objected to will be hereafter considered, but what we desire to say concerning the executor's claim will be in great measure applicable to all the objections urged against the first account as stated. When the appellant executor had stated said account, and

distribution had been made and the same was " *approved,
passed and admitted to record*," by the order of said Court,
it became possessed of certain attributes and was *prima
facie* evidence of the verity of the facts contained therein,
which the Court had by its order sanctioned.   And beyond
all peradventure the *onus probandi* rests upon those who
seek to maintain the affirmative of the allegations contained
in the petition.   To support a different theory of practice
to be observed by the Orphans' Courts of this State, would
be to reverse many of the decisions heretofore announced
by this Court, affirming a practice founded in reason and
resting upon authority.   As sustaining these views we refer
especially to *Owens* v. *Collinson*, 3 G. & J. 25-27; *Spedden*
v. *State*, 3 H. & J. 251; *Ruby* v. *State*, 55 Md. 484-490 ;
*Wilson* v. *McCarty*, Ibid, 277-281; *Scott* v. *Fox*, 14 Md.
388 ; *Stratton's case*, 46 Md. 554.

The claims of executors and administrators stand on the
same footing with those presented by other creditors of de-
ceased persons.   *Levering* v. *Levering*, 64 Md. 399–413.
In this case the claim of the executor was passed after proof
and without objection, and it is clear, we think, beyond
question, that the appellant received the amount of his claim
in full on the 27th of November, 1895, and to establish this
fact, we do not consider it was necessary for him to have
drawn a check in his representative capacity payable to him-
self in his individual capacity ; he had in hand ample funds
with which to pay it, and he swears that he did pay it, and
this we think conclusive of it, as there is no proof to the
contrary.   It was not, however, for him in the first instance
to establish such a fact, but the burden was upon the ap-
pellees to support such contention.   The burden was equally
upon the appellees to disprove by competent testimony the
correctness of the appellant's claim.   The law has left the
appellant in a proceeding like this to act upon the defensive,
and until the appellees have successfully assailed his claim
he is entitled to remain silent and need offer no further evi-
dence to sustain it.   *Stevenson* v. *Shriver*, 9 G. & J. 336.

After a most critical examination of the testimony, taken under the petition of the appellees, we have found no satisfactory legal proof which sustains the allegations of the petition.   Nearly all the witnesses who have testified in support of the facts alleged in the petition are interested as legatees under said will, and whose testimony relates almost exclusively to the fact that they did not know that the claim of the executor for $1,000 was allowed in his first administration account ; that they went to the office of the Register of Wills of said county to get the money which they were entitled to under the distribution made ; that they signed a paper (the same being a release, which will be hereafter considered) that they did not read or hear read ; but that they did not, in signing said paper, intend to approve of the allowance of the claim of the executor for services, or to assent to the payment of the counsel fee.   But there is a total absence of any proof which legally tends to show that any item of the administration account was unjust, false, or fraudulent or improperly allowed.   This we think was essential in support of the appellees' contention.   Whilst Orphans' Courts in this State are Courts of competent jurisdiction, they exercise only a special limited jurisdiction and are confined strictly to the letter of their authority.   They must exercise only the powers conferred on them in accordance with the law, and the facts necessary to clothe them with jurisdiction must affirmatively appear upon the face of their proceedings.   They must not be treated as matters of inference or presumption.   *Norment* v. *Bryden*, 44 Md. 112 ; *State* v. *Warren*, 28 Md. 338 ; *Townshend* v. *Brooke*, 9 Gill, 90 ; *Lowe* v. *Lowe*, 6 Md. 352 ; *Michael* v. *Baker, Extr.*, 12 Md. 158 ; *Snively* v. *Beavans*, 1 Md. 208 ; *Williams* v. *Holmes*, 9 Md. 289 ; *Spencer* v. *Ragan*, 9 Gill, 482 ; *Yeaton* v. *Lynn*, 5 Peters (U. S.), 224.   Speaking of controversies similar to the one now under consideration here, MR. JUSTICE IRVING delivering the opinion of this Court in *Bantz* v. *Bantz*, 52 Md. 689–90, said : " The Orphans' Court is the proper and primary tribunal (although sometimes a Court

of Equity is invoked) to determine all such controversies, and this Court has repeatedly said, that so long as an estate is open (which means not finally closed and settled), the accounts of the executor and administrator, in that Court, are subject to revision and correction as to any matter discovered to be in error. *Edelin* v. *Edelin*, 11 Md. 415; *Stratton's case*, 46 Md. 551. The simple passage of a claim against the estate, or the passage and approval of an account retaining it, does not establish the correctness of either. The most that it accomplishes is to protect the administrator or executor, if he actually pays it without knowledge of its incorrectness. Passage of a claim by the Orphans' Court does not bind the executor to pay it; he may still resist it, and the claimant is put to his proof. Here, the claim for services is preferred by the executor against the testatrix, with no one to object but the petitioners. He is his own paymaster, and because he has chosen to put it into his accounts, and gotten the *ex parte* approval of the Orphans' Court to it, it is clear that he ought not, until the estate is wholly closed, to be regarded in the same light, as if, on the faith of the Court's approval, he had paid a stranger his claim against the estate; but the persons interested in the estate and its distribution ought to be permitted, in a proper way and within proper time, to make their objections to the propriety of his claim. We think this application was within proper time. The claim alluded to was only passed by the Court three days before the passage and approval of the first administration account."

The case of *Bantz* v. *Bantz*, *supra*, from which we have just quoted, was much relied upon by the appellees in support of their argument in this Court both oral and written, but it is in no respect in conflict with the numerous decisions announced by this Court relating to the same subject. The appellees have sought to relieve themselves of the *onus probandi*, and we but reassert the doctrine heretofore maintained, when we say that they cannot contest an administration account without assuming to themselves the position

which ordinarily adheres to the plaintiffs in any action. They assert that the account is erroneous, and they must establish the truth of their charge. On the day upon which the legatees met at the Register's office the first administration account had been stated, and after payment of costs, charges and expenses and the several claims proven against the estate, including $1,000 to the executor for his personal services and $150 for professional services, there remained a balance for distribution of $54,527.60, which was on that day distributed to those entitled thereto under the provisions of said will. Upon this occasion nearly all of the residuary legatees were present and each was paid the amount distributed to him. The administration account was on the desk of the Register within reach and easily accessible to all, who could, if they had desired, have examined the same. Releases had been prepared by the Deputy Register of Wills, and when the said legatees were severally called to receive the amount distributed to each, a release was executed and acknowledged before the Register of Wills, and a check was delivered by the appellant to such legatee. These releases are very similar in form and substance. There is but small difference in the phraseology of any of them, and for the purposes of this opinion we will treat them as substantially the same. They read as follows :

" Know all men by these presents : That I do hereby acknowledge that I have received from Peter W. Shafer, executor of the last will of Peter Shafer, Sr., deceased, the full and just sum of eighteen hundred and sixty-two dollars and ninety-two cents ($1,862.92), being in full of the balance due me on settlement of said executor's first account, exhibited and passed by the Orphans' Court for Frederick County on the 7th day of November, 1895, and hereby release, exonerate, acquit and forever discharge the said Peter W. Shafer, executor as aforesaid, his heirs, executors or administrators, from all claim or demand whatsoever on account of said settlement as aforesaid, either in law or equity."

All of the releases are under seal and signed, attested and acknowledged before the Register of Wills of said county, and have been offered in evidence by the appellant in the trial below. We come now to the consideration of the legal effect of these releases and the relation which they hold to the questions to be determined on this appeal. The appellant contends that these papers cannot be construed as mere receipts, but are drawn with all the formality of deeds, executed, attested and acknowledged as such; that they are absolute and operate as estoppels *in pais;* that they in express terms refer to the first administration account as settled by said executor, " and release, exonerate, acquit and forever discharge him from all claim or demand whatsoever on account of the settlement of said account, either in law or equity." And as such we must regard them, as the case is presented by this appeal. The Court below had no jurisdiction to inquire into their consideration, nor to pass upon or determine their validity. That duty belongs to another jurisdiction, and was no part of the jurisdiction which the Court below sought to exercise. Whilst the petition does not allege that these papers were obtained by fraud practiced upon the appellees, yet if it did, the legal effect would not be different. There is nothing in the proof offered which would justify any such charge. Fraud is not a presumption, but is a fact to be shown by legal and competent evidence as any other fact is proven. It proves nothing in support of a charge of fraud, that a releasor, who could both read and write, failed to read the contents of a release, when he and twenty others on the same day, at about the same time, were engaged in the execution of similar releases, without giving the slightest attention to their contents. The proof in this case goes no further and thus fails in its purpose. *Spitze* v. *B. & O. R. R. Co.*, 75 Md. 162–171.

The order of the Court below requiring the debt of Eva L. Shafer for $745, returned by the appellant and marked " *desperate*," to be " corrected, made collectible and charged against the executor," is without the slightest proof to sup-

port it; and having been objected to the objection should have been sustained.. It is wholly unnecessary that we should discuss this testimony in detail or make anything more than a general reference to it. It is sufficient to say that it is wholly irrelevant, depending in great measure on hearsay, and legally insufficient to sustain the proposition it was offered to support.

It follows from what we have said that the Court below has committed error in the passage of both the orders appealed from, and therefore both orders must be reversed.

*Orders reversed with costs.*

(Decided April 1st, 1897).