## CHARLES T. WRIGHTSON ET AL., EXECUTORS, *vs.* MATTIE E. TYDINGS ET AL.

*Order of Orphans' Court Requiring Executors to Return Debts as Sperate—Appeal.*

When executors, who are presumed to be fully acquainted with the condition of the estate of their decedent, report an inventory to the Orphans' Court showing that certain debts due it are desperate and uncollectible on account of the insolvency of the debtors or because barred by limitations, the Orphans' Court has no power, without any evidence on the subject being adduced, to require the executors to return such debts as sperate and charge themselves therewith.

On June 11th, 1901, an Orphans' Court passed an order directing executors to adopt and return an account prepared for them by an auditor, the executors then filed a different account, but on August 13th, filed the account required by the order of June 11th. *Held,* that an appeal taken within the statutory period after August 13th, was taken in due time, and since the order appealed against was passed without any testimony being taken, no notice of a request that the testimony be reduced to writing was necessary.

Appeal from the Orphans' Court of Talbot County.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alex. L. Seth,* (with whom were *Joseph B. Seth* and *Geo. W. Wilson* on the brief ), for the appellants.

*John H. Lowe,* for the appellees, submitted the cause on his brief.

FOWLER, J., delivered the opinion of the Court.

By his will the late Francis A. Wrightson, of Talbot County, Maryland, devised and bequeathed to his children all his estate real, personal and mixed to be divided among them equally. He provided, however, that any evidences of indebtedness which he might have against any of his children at the time

of his death should be chargeable against their interests in his estate. The appellants, Charles T. Wrightson and Albert Lowe, the former being the son and the latter the son-in-law, of the testator, were named in the will as executors. They duly qualified as such and passed their first account charging themselves with a balance in hand of $1,331.50. This account does not appear in the record but the balance as shown by that accouut is the first item with which the executors charge themselves in their second account, which they filed on the 13th August, 1901. They also charged themselves in this second account with the following amounts, viz:

| | | |
|---|---|---|
| Amounts sales leasehold property...... | 5,900 | |
| Less mortgage on same..... ........ | 5,000 | |
| | 900 | 900 |
| Amt. debts sperate . . . `. . . . . . . . . . .` | | 2,305 95 |
| Adding bal. from first acct.......... | | 1,331 50 |
| Making total in hands of executors.... | | $4,537 45 |

After crediting the various payments made by them there remained in their hands a net balance of $559.68. Together with their second administration account, the executors also filed an inventory of sperate debts amounting to the sum of $2,305.95 with which, as we have seen, they duly charged themselves, and at the same time they filed a distribution account, distributing the whole balance, amounting to $559.65 to Mrs. Tydings, one of the distributees, in order to equalize her interest in the estate with the other legatees. With their account they filed a report or petition asking their account and the distribution account to be approved and also giving several reasons why certain claims must be regarded uncollectible and worthless. The Orphans' Court, however, without any evidence whatever, so far as the record discloses, except the recital in their order of August 13, 1901, passed an order dismissing the petition of the administrators and directed them to state and file another inventory of debts and another administration account in which they were required to return as " sperate," and charge themselves with, over

$40,000 of debts which they had already reported to the Court were wholly or largely uncollectible, as the persons owing them were in most cases insolvent, and that said debts were barred by limitations and otherwise disputed. It appears that in obedience to the requirements of this order of August 13th the executors filed an inventory and account. By the former it appears that " sperate " debts due the estate amounted to the sum of $45,812.79 including of course the $2,305.00 of debts admitted by the executors to be " sperate," and which they had so reported when they filed their first inventory. By the account thus filed, as required by the order of Court, it appears that after paying all debts due by the estate, there remained a balance of $40,016.16 in the hands of the executors for distribution. The amount of commissions allowed in the account the Court below required to be passed is $2,088.64, being eight per cent on $20,000; and two per cent on $24,432.14. In other words, by requiring the alleged uncollectible or " desperate " debts to be included in and accounted for as part of the estate the commissions alone allowed the executors amount to a sum nearly equal to the whole amount accounted for in the account the executors asked to be approved. From the order of the 13th August, 1901, the executors have appealed.

The first question presented arises upon a motion to dismiss the appeal. It appears that on June 11th, 1901, the Court below passed an order that the executors should ado t as their second account the account and inventory prepared for them by the auditor, and they were required to adopt and file this account and inventory on or before the 18th of June— that is to say within five days from the date of the order. Instead of obeying this order they choose to file a different account and make a different distribution. This they did and then there were two accounts and two distributions before the Court, and although the order of June 11th directed them to be stated as therein directed, it was not certain which of them would be finally approved until the order of August 13th was passed adopting the account and distribution prepared by the

auditor. Hence when the appeal was taken from this order the very day it was passed no greater expedition can be required. It is also suggested by the appellees that the absence of evidence from the record to show the real character of the alleged uncollectible claims is to be charged to the negligence of the appellants in failing to give notice of their intention to appeal and request that the testimony be reduced to writing as required by Art. 5, sec. 59 of the Code. But it does not appear what, if any testimony was taken. Motion overruled.

And now only a few words in regard to the merits of the case. It seems to us that the statement of facts which we have given above is sufficient without any elaboration to show that the order appealed from was improvidently passed and should be reversed.

When executors or administrators who are in possession of the books and papers of the deceased, and are or should be, if they perform their duties, fully acquainted with the condition and situation of the estate and the solvency or insolvency of the debtors of the estate, report that certain debts are sperate and certain of them doubtful or desperate, it would be palpably unjust to allow the Orphans' Court to require them, without any evidence, to charge themselves with worthless debts as though they were good and collectible. No authority would seem to be required to sustain so clear a proposition, but the precise question has been decided. In the case of *Shafer* v. *Shafer*, 85 Md. 561, it was held that the Orphans' Court has no power to pass such an order in the absence of sufficient evidence to show that the debt can be collected. We find no such evidence in the record before us, although the order appealed from gives as a reason for the Court's action that "after submission to this Court and full hearing thereon, this Court passed the order of June 11th, 1901, requiring account and distribution as prepared and returned by the auditor of this Court June 11th, 1901." What the "full hearing" consisted of, however, we are unable in the present state of the record to discover. The order appealed from will

have to be reversed and remanded for further proceedings ; and it will be right and proper that the executors should be required to return as sperate such claims as are shown by sufficient evidence to be collectible.

> *Order reversed and cause remanded,*
> *appellees to pay costs.*

(Decided January 16th, 1902.)