## NUTTER T. HAMMOND

### *vs.*

## NEW YORK, PHILADELPHIA AND NORFOLK RAILROAD COMPANY, A CORPORATION.

*Negligence: damages.   Releases: under seal; binding in absence·   of fraud.*

One who was hurt by a train while driving over a railroad crossing signed an "accident paper," presented to him by the railroad company, and at his instance and request his wife signed for him a release under seal, and he made his mark thereto; the release was for the money consideration he had agreed to accept; there was no evidence of fraud or undue influence practiced upon him; it appeared to have been his free and deliberate act: *Held,* that under such circumstances the release could not be impugned, and that it was a bar to any recovery or further suit on the same cause of action.     p. 446

Unless impeached for fraud or duress, or traversed as not genuine, a plaintiff will not be allowed to allege or prove that a release for the cause of action was without sufficient consideration, or that the amount paid was in reality not all that was due.                              p. 447

*Decided April 26th, 1916.*

Appeal from the Circuit Court for Worcester County. (JONES and STANFORD, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alonzo L. Miles* (with whom was *E. Stanley Toadvin* on the brief), for the appellant.

*George H. Myers* (with whom were *Joshua W. Miles* and *John W. Staton* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a suit by the plaintiff against the defendant company to recover damages for personal injuries received by him on the 30th day of August, 1912, at one of the railroad crossings of the defendant in the City of Salisbury, Wicomico County, Maryland, by reason of the alleged negligence of the defendant.

The defendant is a corporation, owning and operating a railroad running from Delmar, Delaware, to Cape Charles, Virginia, and running through Salisbury, Maryland, and it is alleged, that the plaintiff was injured by the negligent lowering or falling of its safety gates, upon the team of the plaintiff while he was driving across the railroad track, at one of the public crossings, as stated in the declaration.

The defense mainly relied upon by the defendant was a release under seal, dated the 31st day of August, 1912, executed by the plaintiff, releasing the defendant company from any liability for personal injuries and damage to personal property sustained by him, by reason of the alleged negligence charged in the *narr.*

The defendant by its third and fourth pleas sets up the release as a bar to the action.

By the third plea, the defendant avers, that after the alleged claim accrued, and before suit, plaintiff by deed released the defendant therefrom.

By the fourth plea, it is alleged that after the alleged wrongs and injuries, set out in the declaration, and before the institution of this suit, the plaintiff by his writing, under seal, forever released the defendant from any claim on account thereof, and discharged the defendant therefrom.

The plaintiff by replication to the third plea denied that the release was his deed, and by his amended sixth replication, avers, as follows:

"And for a further replication to the defendant's third and fourth pleas, says, that on the 31st day of August, 1912, the day after the wrongs complained of in his *narr.*, he was visited by C. C. Waller, Special Agent of the defendant, and Henry L. Wailes, its residing physician, and being informed and advised by the said physician that he would be out in three or four days, said physician having seen him on the day of the accident, and believing and relying upon said physician's statement while suffering from the effects of the wrong complained of, and not realizing the extent and seriousness of his injuries caused by said wrong, and being induced thereto by the statements of said physician, he did agree to accept fifty dollars from the defendant, and did sign a paper, which was a statement of facts concerning the cause of the wrongs done to him by the defendant as he believed; but soon finding himself more seriously injured than he was represented to be by the defendant's physician, being sick and sore and confined to his bed, he, on receipt thereof, returned the voucher, papers and check which he received and did not sign any receipt to the defendant, but did not accept or use said check and has not used same, wherefore the plaintiff says that even though he may have signed some instrument of release to said defendant, that the same, being procured and obtained and given in the manner and under circum-

stances hereinbefore set out, is void and of no legal
effect."

Issue was joined upon a traverse of this replication and
the other pleas, and the case proceeded to trial.

In the course of the trial, the plaintiff reserved four ex-
ceptions, three to the rulings upon evidence and the fourth
to the ruling of the Court, upon the prayers. From a judg-
ment, in favor of the defendant, the plaintiff has appealed.

The Court below rejected all of the prayers offered by the
plaintiff and defendant, except the defendants third prayer,.
which instructed the jury, that according to the evidence,
the release offered in evidence was executed by the plain-
tiff and was a bar to the plaintiff's action, and their verdict,
must be for the defendant.

As the defendant's third prayer presents the vital question
in the case, it will be considered and disposed of first.

The release relied upon by the defendant and offered in.
evidence, is as follows:

"Know All Men by These Presents, That I, Nutter
T. Hammond, of near Salisbury, in the County of
Wicomico and State of Maryland, in consideration of
the sum of fifty dollars lawful money to me paid by
the New York, Philadelphia and Norfolk Railroad
Company at the time of the sealing and delivery here-
of, the receipt whereof is hereby acknowledged, have
remised, released and forever quit claimed and dis-
charged, and by these presents for myself, my heirs,
executors and administrators do remise, release and
forever quit claim and discharge unto said The New
York, Philadelphia and Norfolk Railroad Company
and their successors, all claims and demands which I
have or can or may have, against the said The New
York, Philadelphia and Norfolk Railroad Company
or their successors, for or by reason of any matter,
cause or thing whatsoever, and more especially by rea-
son of the personal injuries sustained by me, the said
Nutter T. Hammond, and loss of and damage to wear-

ing apparel and other personal property, in conse-
quence of crossing gate of the said The New York,
Philadelphia and Norfolk Railroad Company being
lowered on me by crossing watchman, while I was
crossing said railroad, at or near Salisbury, in the
County of Wicomico and State of Maryland, on or
about the thirtieth day of August. A. D. nineteen hun-
dred and twelve, including herein any and all loss or
damage whatsoever sustained by me in consequence or
by reason thereof.

"And the said The New York, Philadelphia and
Norfolk Railroad Company, in paying the said sum
of money, do so in compromise of the said claim and
demand above released, not admitting any liability on
account of the same.

"Witness my hand and seal the thirty-first day of
August, one thousand nine hundred and twelve.

his

"(Signed)   Nutter T. Hammond.   (Seal)

mark

"Sealed and delivered in the presence of us:
  "Henry S. Wailes, M. D.
  "C. C. Waller."

It is too clear for dispute, that if the paper writing here
set out and offered in evidence is a valid and genuine release,
under seal, it is an absolute bar to the right of the plaintiff
to recover in this suit.

If on the other hand, there be evidence legally sufficient
to show that the plaintiff was induced to sign the release by
fraud or duress, or that it was procured by the fraudulent
representations of the defendant company the case should
have been submitted to the jury, upon the issue of fact as
to the fraud in obtaining the release.

The rule of law, as announced by Mr. Poe, in his work on
*Pleading and Practice,* Vol. 1, Third Edition, sec. 653, as
to the legal effect of a plea of release under seal, has often
been applied in this and other jurisdictions and is thus

stated: "Unless impeached for fraud or duress or traversed as not genuine this defence will be complete and the plaintiff will not be heard to allege or allowed to prove that it was without sufficient consideration or that the amount paid was in reality not all that was due." *Ingersoll* v. *Martin,* 58 Md. 67; *Spitze* v. *B. & O. R. R. Co.,* 75 Md. 162; *Virdin* v. *Stockbridge,* 74 Md. 481; *Shafer* v. *Shafer,* 85 Md. 560; *Shaffer* v. *Cowden,* 88 Md. 398; *Hartshorn* v. *Day,* 19 Howard, 211; *George* v. *Tate,* 102 U. S. 564; *Chicago-St. Paul Rwy. Co.* v. *Belliwith,* 55 U. S. App. 113; *Pacific Mt. Life Ins. Co.* v. *Webb,* 157 Fed. Rep. 155.

In this case, the plaintiff seeks by the sixth replication to the third and fourth plea, to avoid and impeach the release, not by an averment in terms that the execution of the release was procured and obtained by fraud or duress but because of certain erroneous statement of facts by the physician of the defendant company, as to the extent of his injuries, and that he was induced at a time when he was suffering from the effects of the wrongs complained of, by these statements to agree to accept fifty dollars, and did sign a paper, which was a statement of facts concerning the cause of the wrongs done to him, by the defendant, and even though he may have signed some instrument of release, that the same, being procured and obtained in the manner and under circumstances hereinbefore set out is void and of no legal effect.

Assuming, then, that the question of fraud, and misrepresentation was properly presented by the pleadings, it was clearly incumbent upon the plaintiff to show that the release had been procured by the fraud or imposition of the defendant company.

We think, upon the record now before us, that the Court below was clearly right, in holding, that the plaintiff had failed to meet the burden of proof resting upon him to avoid and strike down the release in this case, and that there was no evidence produced legally sufficient to show that the re-

lease had been procured, by the fraud or imposition of the defendant company.

It is well settled law, that evidence of fraud to warrant a Court in submitting a case to the jury as to the invalidity of an instrument under seal must be clear, direct and satisfactory.

In *Pa. R. R. Co.* v. *Shay,* 82 Pa. St. 198, a somewhat similar case, Mr. JUSTICE SHARSWOOD said: It has been more than once held that it is error to submit a question of fraud to the jury upon slight parol evidence to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable otherwise it should be withdrawn from the jury. *Stine* v. *Sherk,* 1 W. & S. 195; *Dean* v. *Fuller,* 4 Wright (Pa.), 474; *Irwin* v. *Shoemaker,* 8 W. & S. 75.

In *Duvall* v. *Coale,* 1 Md. Ch. 168, it is said, that deliberate settlements and solemn instruments are not to be impeached and overthrown by light and trivial circumstances, which at most furnish a foundation for ingenious minds to speculate upon and to weave plausible theories of unfairness in the transaction with which they are associated.

In *Shafer* v. *Shafer, supra,* it is said: Fraud is not a presumption but is a fact to be shown by legal and competent evidence as any other fact is proven.

The proof in the case, as to the execution of the release, is clear and positive. The plaintiff admits that he received a draft for $50 at the time, which is the consideration in the release, but subsequently returned it to the company. He further testified and admitted that he signed the statement of facts in his own handwriting and that the release was signed by his wife for him, at his instance. He identified his signature to the accident paper.

The wife in her testimony admitted that she signed a paper for her husband on the day of the meeting, but said she was told it was the accident statement, and it was not read to them.

There is nothing in the testimony to show or indicate fraud or imposition upon the part of the defendant. It was said by this Court, in *Spitze* v. *B. & O. R. R. Co.,* 75 Md. 162: "The testimony proves not fraud, but carelessness on the part of the plaintiff and it would lead to startling results if a person who executes, without coercion or undue persuasion, a solemn release under seal, can subsequently impeach it on the ground of his own carelessness, though at the very time of its execution, he might, had he seen fit, have advised himself fully as to the nature and legal effect of the act he was doing. He can not, under these circumstances, be heard to complain that an imposition was practiced upon him. He can not invoke his own heedlessness to impeach his solemn release, and then call that heedlessness some one else's fraud. If he did not know what he was signing, it was his plain duty to inquire. He had no right to act as one who understood what he was doing, unless he intended to lead those with whom he was dealing to believe that he did understand the act that he did. Such evidence as that which the plaintiff has adduced can not be treated as sufficient to strike down, as fraudulent, a written instrument under seal."

And to the same effect are the cases of *Shaffer* v. *Cowden,* 88 Md. 400; *Shafer* v. *Shafer,* 85 Md. 561; *Cox* v. *Md. Elec. Rwy's. Co.,* 126 Md. 306; *McGrath* v. *Peterson,* 127 Md. 418.

The evidence upon the part of the defendant in support of its plea, is clear and positive, that no fraud, misrepresentation or imposition was practiced upon the plaintiff in procuring the release. Dr. Harry S. Wailes, the company's physician, testified, that he made an examination of the plaintiff, after the accident and found a scratch over the left eye, sprained left shoulder, bruised left side and left knee, and he made this official report to the company. He also testified that he was present when the plaintiff executed the release, that it was read to him, and he called his wife to write his name and she did so, and he witnessed it.

He further testified, that the plaintiff told Mr. Waller, the Claim Agent of the company that he was aware of the fact that the company did not injure him on purpose and all he expected from the company was what was right, and he would naturally lose some time from work and that if the company would compensate him for that it would be all right. Mr. Waller said: "What do you think would be right for your services?" He said, "I got to get my tomatoes in or my corn, and it will cost me a dollar and a half a day." "Well," he said, "How much will that amount to." He said, "Well, I don't know" and turning to Mr. Waller he said, "How much do you think?" He said, "I am not in a position to say." Finally Mr. Waller said, "Mr. Hammond, will fifty dollars compensate you?" He said, "Yes." Mr. Waller said, "Is fifty dollars satisfactory to you?" He said, "Yes, sir." He gave him a one day sight draft on the Treasurer of the N. Y. P. & N. R. R. and he asked him where he did his banking business and he said "Peninsula Trust Company," and he said, "Present that one day sight draft to the Peninsula Trust Company, and it will be honored," and he made arrangements with Mr. McCandlish to honor the draft upon its being presented.

Mr. C. C. Waller, the special agent, of the defendant company, for investigating and settling all claims against the company, testified as follows: Q. Tell us how you arrived at the settlement—did you see that release executed? A. Yes. Q. Who signed it? A. Mrs. Hammond signed it and Mr. Hammond made his mark. Q. Did Hammond read it? A. No, sir; Hammond did not. Dr. Wailes read it to him while I was preparing the draft on the Pennsylvania Railroad Company. Q. Whose writing is that, "his mark?" A. Mine. Q. Who made the mark? A. Mr. Hammond, most assuredly did. Q. Did Hammond say anything about whether or not he knew what he was signing? A. I asked him before he signed it. I said, "Now Mr. Hammond, you understand that this is a release releasing the company from all claims you might have against it."

Mr. Hammond said, "Yes, I understand it," and Mr. Hammond was well satisfied with the amount we gave him that afternoon.

There is no competent evidence to impeach the release as not genuine, or that the defendant held out any improper inducements which influenced the plaintiff to sign the release.

Nor is there any evidence to support the replication to the plea, that the plaintiff signed only a statement of facts called "the accident paper," and did not execute the release.    On the contrary, the undisputed proof shows, that the signature to the "accident paper," was in the handwriting of the plaintiff, and his signature to the release, was in the handwriting of the wife, at the instance of the plaintiff and tested by two witnesses.

The conclusion, we have reached, after a careful examination of the case, is that there was no evidence legally sufficient to be submitted to a jury upon the issue of fraud or bad faith in the obtention of the release, and as the plaintiff failed to make out his case, the Court below was right in granting the defendant's prayer, withdrawing the case, from the jury.

We find no reversible error in the rulings upon testimony and as our conclusion disposes of the case, the judgment will be affirmed.

*Judgment affirmed, with costs.*

CONSTABLE, J., dissented.