(Decided 14th January, 1892.)

## HENRY C. SPITZE *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Release under Seal—Insufficiency of Consideration—Ignorance—Heedlessness—Fraud.*

Unless impeached for fraud or duress or traversed as not genuine, a release under seal will be a complete defence to an action, and the plaintiff will not be heard to allege or allowed to prove that it was without sufficient consideration, or that the amount paid was, in reality, not all that was due.

A person who executes, without coercion or undue persuasion, a solemn release under seal, cannot subsequently impeach it on the ground of his own carelessness, when at the time of its execution he might, had he seen fit, have advised himself fully as to the nature and legal effect of what he was doing.

Spitze *vs.* Balto. & Ohio Railroad Co.

Such person cannot invoke his own heedlessness to impeach his solemn release, and then call that heedlessness some one else's fraud. If he did not know what he was signing, it was his plain duty to inquire. He had no right to act as one who understood what he was doing, unless he intended to lead those with whom he was dealing to believe that he did understand the act that he did.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, FOWLER, and McSHERRY, J.

*Thomas Mackenzie,* and *John V. L. Findlay,* for the appellant.

*George Dobbin Penniman,* (with whom was *W. Irvine Cross,* and *John K. Cowen,* on the brief,) for the appellee.

It has been settled in Maryland, "that a person who attempts to evade an engagement into which he has entered, on the ground that he has been imposed upon, must make out the imposition *by proof*. Fraud is not to be presumed, and though it may not be necessary to prove it by direct and positive testimony, yet the circumstances upon which the presumption of its existence is founded, should lead plainly and directly, and by strong implication, to that conclusion.

"Deliberate settlements and solemn instruments are not to be impeached and overthrown by light and trivial circumstances, which, at most, furnish a foundation for ingenious minds to speculate upon, and to weave plausible theories of unfairness in the transaction with which they are associated." *Duvall vs. Coale,* 1 *Md. Ch. Dec.,* 168.

Evidence of fraud to warrant a Court in submitting a case to the jury as to the invalidity of a solemn instru-

ment under seal, must be clear, precise and indubitable. *Penn. R. R. Co. vs. Shay,* 82 *Pa. St.,* 198; *Irwin vs. Shoemaker,* 8 *Watts & S.,* 75; *Dean, et al. vs. Fuller,* 4 *Wright,* 474; *Stine vs. Sherk,* 1 *Watts & S.,* 195.

If Spitze could read the releases and did not do so, or being unable to read failed to have them read and explained to him, and executed them in ignorance of their contents, he cannot now claim that because the papers had a different legal meaning from what he suppposed, for this reason they should be held invalid as being tainted with fraud. *Penn R. R. Co. vs. Shay,* 82 *Pa. St.,* 198; *Seeright vs. Fletcher,* 6 *Black,* 380; *May vs. Johnson,* 3 *Ind.,* 449; 2 *Starkie on Evidence, part* 1, *page* 374; *Greenfield's Estate,* 2 *Harris,* 496; *Hallenbeck vs. Dewitt,* 2 *Johnson,* (*N. Y.,*) 404.

It will be noted that there is no evidence that Spitze was a man of weak mind or that any of his superior offi- cers used any pressure upon him to persuade him to exe- cute the releases. The bare question is whether it is fraud on the part of the appellee's agents in the usual course of business of paying relief association benefits, to present to the appellant the usual form of release under the rules, and to allow him to execute it without reading it to him when he writes his name in English, and does not state that he cannot read the paper and wishes it explained. Spitze does not even claim that the wording of the paper deceived him, but signing it in utter disregard of its contents, now claims that his ignorance and carelessness is "fraud of the defendant."

McSHERRY, J., delivered the opinion of the Court.

This suit was brought to recover damages for a per- sonal injury received by the appellant whilst in the service of the appellee. The appellant was a blacksmith, and in the discharge of his duties had occasion to use a steam trip-hammer owned by the railroad company. One of the housings of this hammer was insecurely

Spitze *vs.* Balto. & Ohio Railroad Co.

fastened, and, as a consequence, when the hammer was being operated by a co-employé of the plaintiff, it suddenly fell upon and seriously crushed the right hand of the appellant. To the declaration the company pleaded —first, not guilty; and, secondly, two releases executed by the appellant under seal. The appellant demurred to this latter plea, and upon the City Court overruling the demurrer, he filed a replication, to which the appellee demurred. This demurrer was sustained, and the appellant then filed another replication to the second plea, and averred that the releases were obtained by the fraud of the railroad company. Issue was joined upon a traverse of this replication, and the case proceeded to trial. Upon the conclusion of the case made by the plaintiff, the defendant asked and the Court gave two instructions which withdrew the case from the jury. By the first the jury were told that under the undisputed evidence, the general foreman of the blacksmith shop was a fellow-servant of the plaintiff, and if the injury complained of was occasioned by the negligence of the foreman in not repairing the hammer, then the plaintiff could not recover unless the jury should find that the defendant did not use reasonable care in the employment of the foreman, and that there was no legally sufficient evidence adduced to show that the company had not used reasonable care in the employment of the foreman. By the second they were instructed "that the releases signed by the plaintiff are an absolute bar to the right to recover in this suit, unless there be evidence legally sufficient to show that the said plaintiff was induced to sign the said releases by fraud, and that there has been no evidence produced legally sufficient to show such fraud, and the verdict of the jury must therefore be for the defendant."

A proper understanding of the questions involved requires a brief statement of the material facts disclosed by the record.

In 1882 the appellant became a member of the Baltimore and Ohio Employés' Relief Association, a body corporate then in existence. By the provisions of its by-laws and the terms expressed in the applications of persons who desired to avail of its benefits, all members—and membership was limited to employés of the Baltimore and Ohio Railroad Company, and other railroad lines operated by it—were required to contribute a percentage of their monthly wages for the formation of a fund out of which those who might be injured or disabled or become sick whilst in the company's service would receive a daily allowance, regulated according to the amount of their respective contributions. It was plainly stipulated that upon the payment of these allowances the employé receiving them should execute a release discharging the railroad company from all liability for the injury occasioning his disability. The eighth section of the constitution of the Association declared that for the purpose of lessening the contributions of members, the Baltimore and Ohio Railroad Company had consented to bear all the expenses necessary to the proper management of the Association, and had contributed one hundred thousand dollars towards its funds, and that the whole of the interest received from that contribution would be used every year for the same purpose. When the appellant was injured he was a member of this Association. On the 30th day of May, 1887, he received from the Relief Association the sum of $58.50; and on the 20th of June following, the further sum of $36.00—these amounts being the sums to which he was entitled under the rules of the Association. He was injured on March 16th, 1887. Upon each of the two occasions he received the money from the Relief Association, as just mentioned, he executed a release, under seal, pursuant to the terms of his application for membership; and by these releases he declared "I do hereby release and

Spitze *vs.* Balto. & Ohio Railroad Co.

forever discharge the said company * * * * from all claims or demands for damages, indemnity, or other form of compensation I now or may or can hereafter have against either of the aforesaid companies by reason of said injuries." Upon his recovery he returned to the service of the company in a different capacity, and for a part of the time at reduced wages. On March the 11th, 1890, he instituted this suit.

These releases are the ones relied on in the second plea. We can discover no error in the Court's ruling on the demurrer to that plea, and no point has been made with reference to that ruling in the brief of the appellant's counsel.

The replication first filed to the second plea avers that the appellant became a member of the Relief Association upon the faith of the statements made in article eight of the constitution. That the railroad company did not bear all the expenses necessary to the proper management of the affairs of the Association, and that it did not contribute the whole of the interest received from the one hundred thousand dollars to lessen the contributions of the members; and that the company had not guaranteed the faithful and true performance of the Association's obligations, as it was required to do by the Act of Assembly incorporating the Association, and that "by reason of the defendant's default or misrepresentation in the premises, the said papers cannot have the effect of releasing the defendant from the claims of the plaintiff sought to be enforced by this action."

The Court was clearly right in sustaining the demurrer to this replication. The replication does not aver that the releases were obtained by fraud. If it was designed to impeach them on that ground it does so, at most, merely inferentially. It seeks to avoid them, not because any fraud was practised in procuring them, but because of an alleged partial failure of some of the inducements

which led the appellant to become a member of the Relief Association.   Assuming, as we must upon this demurrer, that there was this partial failure of some of these inducements, does it follow that releases voluntarily given upon the payment of sums previously agreed to and definitely fixed, are void, and are no answer to an action founded on the tort expressly covered by those releases ?   However complete may have been the failure of the railroad company to observe some of the inducements which influenced the appellant to become a member of the Relief Association, after the injury befell him he received by way of compensation or assistance, precisely what the Association had agreed to pay him; and he received no less by reason of any omission on the part of the railroad company to perform its undertakings with the Association.   If every obligation of the railroad company now alleged to have been broken had been literally kept, the appellant would not and could not have received, when injured, a single dollar more than he did receive.   The utmost that can be asserted is, that he might not have been required to contribute to the relief fund quite so much as he did; but even this is not averred in the replication.   The replication asserts, in effect, not that the releases were obtained by fraud, but that the plaintiff was induced to enter the Relief Association on the faith of agreements made by the railroad company with the Association, and then not carried out, whereby the releases ought to be avoided; although it fails to aver that by these omissions or breaches of agreement the plaintiff was injured in the slightest degree.   This was no answer to the plea. "Unless impeached for fraud or duress or traversed as not genuine, the defence"—a release—"will be complete, and the plaintiff will not be heard to allege or allowed to prove that it was without sufficient consideration, or that the amount paid was, in reality, not all that was due." *Poe on Pleading, sec.* 653.

The case of *McConkey vs. Cockey,* 69 *Md.,* 286; relied on by the appellant, is clearly distinguishable from this. That was a proceeding instituted to set aside a release obtained by a guardian from his ward by fraud. Instead of paying to the ward, when he attained his majority, the money which belonged to him, the guardian prevailed upon him to accept shares of worthless stock, and thereupon obtained the release. The ward did not get what was his, but was imposed upon and deceived. Upon proof of the facts the release was declared null. So in *Paye vs. Bent, et al.,* 2 *Met.,* 371, the defendant relied upon a release of the cause of action, and the plaintiff replied that the release was procured by the fraudulent representations of the defendant, and the case was allowed to go to the jury upon the issue of fact as to *fraud in obtaining the release,* because there was evidence to support that issue, though it did not in the opinion of the jury, establish it. These cases bear no resemblance to the question raised by the demurrer we are considering—that question is the *sufficiency* of the replication.

After the Court had sustained the demurrer, the plaintiff filed another replication, alleging in the usual form, that the releases had been obtained by the fraud of the railroad company. Upon the issue made on the traverse of this replication the question of fraud was properly and distinctly raised. It thereupon became incumbent on the appellant to show that these releases had been procured by the fraud of the defendant; but the only evidence adduced was ruled by the Court below to be legally insufficient to sustain the replication. This ruling is brought before us by the second exception in the record taken to the granting of the second instruction heretofore alluded to. In support of this replication the plaintiff proved that the releases were not read to him, and that he could not read English; that he

believed he was signing a receipt to the Baltimore and Ohio Employés' Relief Association, and nothing more, and that until he was informed by counsel that the said papers contained a release of the Baltimore and Ohio Railroad Company, and all other companies operating its lines, he had no idea of the meaning of the said papers in this respect. He also offered evidence tending to prove that one Gosnell, his superior officer, had waited on him after he was injured, and before he signed said papers, and had repeatedly promised him that he would give him another position, at the same wages he was getting when he was hurt; that Gosnell kept this promise for two years by employing plaintiff as superintendent or overseer of the axle department, when the office was abolished, since which time he had been in the service of the defendant at reduced wages; that he had not asked to have the said papers read to him; that he read the German Journal, but not the American papers; that he never read a book in English; that he can read a little English now, but could not when he was hurt, and that he did not ask the man who brought the releases what they were, and did not ask to have any explanation of them made to him; that he did not say to the person who brought the releases he could not read English, and that he signed the papers, when requested, without knowing what was in them; that he had been in this country for twenty-four years.

Now, in all this there is not the faintest suggestion that the agents of the railroad company or the officers of the Relief Association knew, or had reason to believe, that the appellant could not read English; or that they made any statement or held out any inducement which influenced him to sign the releases without inquiring as to their contents. There is no pretence that they concealed anything from him which they were bound to communicate, or that they practised any imposition or deception

upon him.   There is nothing to indicate bad faith on their part, and nothing to show that they knew or suspected he did not fully understand the import and effect of the papers he signed.   He gave no intimation that he was ignorant of what he was doing, and the attending circumstances, as disclosed, imposed no duty upon these agents and officers to enter into explanations with reference to a subject which, from his silence and his conduct, they were justified in assuming he thoroughly understood.   It was in his power to inform himself as to the contents of the releases before he signed them. The testimony proves, not fraud on the part of the defendant, but carelessness on the part of the plaintiff; and it would lead to startling results if a person who executes, without coercion or undue persuasion, a solemn release under seal, can subsequently impeach it on the ground of his own carelessness, though at the very time of its execution, he might, had he seen fit, have advised himself fully as to the nature and legal effect of the act he was doing.   He cannot, under these circumstances, be heard to complain that an imposition was practised upon him.   He cannot invoke his own heedlessness to impeach his solemn release, and then call that heedlessness some one else's fraud.   If he did not know what he was signing, it was his plain duty to inquire.   He had no right to act as one who understood what he was doing, unless he intended to lead those with whom he was dealing to believe that he did understand the act that he did.   Such evidence as that which the plaintiff has adduced cannot be treated as sufficient to strike down, as fraudulent, a written instrument under seal.   We are, therefore, of opinion that the Court below was right in granting the instruction set out in the second exception.

Inasmuch as this conclusion is decisive against the plaintiff's right to recover it becomes unnecessary to

discuss the question raised by the first exception, viz., the correctness of the first instruction hereinbefore set forth.

The judgment will be affirmed, and it is so ordered.

> *Judgment affirmed, with*
> *costs in this Court, and*
> *in the Court below.*

(Decided 14th January, 1892.)