# ELIZABETH W. McGRATH

*vs.*

# CHARLES L. PETERSON.

*Section 86 of Article 75 : equitable defenses at law. Contracts:
signed unread.   Fraud.*

A defense which is good at law can not be pleaded on equitable grounds.                                    p. 413

A party who, being able to read, deliberately signs a contract without reading, or scrutinizing it, can not escape liability under it, occasioned by his own carelessness, unless his signature to the contract was occasioned by fraud or duress.        p. 416

And if there is any evidence of any such fraud, etc., it is error not to submit it to the consideration of the jury.    p. 418

Before a court can grant a prayer withdrawing a case from the consideration of the jury, on the ground of want of evidence, it must assume the truth of all the evidence tending to sustain the claim, or defense, as the case may be, and all inferences of fact, fairly deducible from it, and this although such evidence be contradicted in every particular by the opposing evidence.                                    p. 414

*Decided January 12th, 1916.*

Appeal from the Circuit Court for Somerset County.
(STANFORD, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE,
THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE,
JJ.

*Gordon Tull,* on the brief for the appellant.

*Miles & Meyers,* on the brief for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This suit was instituted by the appellee to recover damages
from the appellant for breach of a written contract of sale
of land; and, upon the appellee recovering judgment in the
amount fixed by the contract for the breach thereof, this
appeal arises.

The appellant, among other pleas, filed two for defenses
upon equitable grounds, and, upon demurrers to them being
sustained, pleaded over by filing a plea averring that the
alleged contract had been procured by the fraud of the appel-
lant, and also filed two additional pleas for defense on equit-
able grounds. Demurrers again to the equitable pleas were
sustained.

We are of the opinion the demurrers were properly sus-
tained. Everything that could have been proved under the
equitable pleas, could have properly been made matters of
defense under the plea of fraud. This Court has recently,
in passing upon section 86, Article 75 of the Code, declared
that a defense which is good at law cannot be pleaded on
equitable grounds; *Flack* v. *Barlow,* 110 Md. 159; *Robey*
v. *State, use of Mallery,* 94 Md. 71 and *Stump* v. *Warfield,*
104 Md. 551.

There were four exceptions taken to the rulings of the Court, three on questions of evidence and one on the prayers. The settlement of the question of whether or not the Court was correct in granting the appellee's only prayer, presents the controlling point in the case. This prayer, in effect, was a demurrer to the appellant's evidence in support of her plea of fraud, for by it the Court instructed the jury, as a matter of law, that there was no legally sufficient evidence in the case to show that the contract sued upon had been procured by fraud, and that if they believed the appellant signed the contract their verdict must be for the appellee. Of course, in considering this prayer it is hardly necessary to remark at this day, that, before the Court can grant such an instruction, it must assume the truth of all the evidence tending to sustain the claim or defense, as the case may be, and all inferences of fact fairly deducible from it; and this though such evidence be contradicted in every particular by the opposing evidence; *Jones* v. *Jones,* 45 Md. 144.

The controversy arose over the attempted sale of a farm belonging to the appellee in Somerset County. The entire negotiations for the sale with the appellant were carried on through the agent of the appellee, H. D. Yates, a real estate broker, and his associate, Mr. Brisbane. The appellant was the owner of a farm which she had previously placed in the hands of Yates to sell. Mr. Brisbane first opened the negotiations with the appellant for the purchase of the Peterson, or appellee's, farm by asking the appellant to purchase it. The appellant testified she told him she would not buy it until she had sold her own place. A few days later Brisbane was back, and she and her husband both told him she would not make a contract to take the place for they were "not going to do anything to get into trouble"; meaning they were not in good health and would have to put on a mortgage unless they first got the money by a sale of her own place. A few days later Mr. Yates went to the appellant's home and tried to induce her to buy the place, but she gave him the

same reasons she had given Brisbane. Later it appears that
the appellant's daughter paid fifty dollars, without the knowl-
edge or consent of the appellant, to Yates, for an option on
the same farm; and it was testified by the daughter that the
purchase was to be for herself, but she never received nor
signed a contract, Yates telling her that it was her "mother
he wanted." The appellant further testified in response to
an inquiry as to why she signed the contract: "Because Mr.
Yates—I met him on the street here one day and he told me
that my daughter had been to his house and put up fifty
dollars, and it was necessary for me to sign in order to save
the fifty dollars, and wanted to know when I would go to his
house to sign the contract." Later she went to his house and
signed the contract at which time, in testifying as to what
he said to her, said: "I told him I wasn't going to get into
any trouble; I wasn't going to do anything to get into trouble,
and he told me there wasn't any trouble or anything; it was
only to show that when he sold my place, I would take that."
Her place has never been sold.

The appellant further testified that the contract was not
read to her and she had not read it herself and knew none of
its provisions, giving as the reason that Yates said he was in
a hurry and had work to do and that she trusted him because
she had explained to him that she did not want to get into
any trouble.

The daughter of the appellant testified as follows: "Q.
Now, Mrs. Bowe, do you remember any statement that was
made by Mr. Yates to Mrs. McGrath about signing a con-
tract? A. He told her it was necessary for her to sign or I
should lose the money. He told her it meant nothing except
that when he sold her place she would take the Peterson
place."

It appears to us that the Court below in granting the
prayer of the appellee in the face of the above testimony,
must have acted upon the theory that the appellant was
bound by her act in signing the contract since she testified

she had signed it without reading or scrutinizing it, when admittedly she could read, and that she could not escape liability under it occasioned by her own carelessness. That such is the general rule is not open to question. The case of *Spitze* v. *B. & O. R. R. Co.,* 75 Md. 162, was a suit for personal injuries, and, upon the company pleading releases, the plaintiff filed a replication alleging they were obtained by the fraud of the company; but the Court below ruled the evidence legally insufficient to sustain the replication, and this Court affirmed the ruling. The evidence offered showed the plaintiff could not read English, and that the releases were not read to him; that he thought they were receipts to the relief department; but that he did not ask the man who delivered them to him what they were, and did not ask to have any explanation of them made to him. The Court said: "If he did not know what he was signing, it was his plain duty to inquire. He had no right to act as one who understood what he was doing, unless he intended to lead those with whom he was dealing to believe that he did understand the act that he did. Such evidence as that which the plaintiff has adduced cannot be treated as sufficient to strike down as fraudulent a written instrument under seal." But that very case recognizes the exception to the rule when it further said: "It would lead to startling results if a person, who executes *without coercion or undue persuasion,* a solemn release under seal, can subsequently impeach it on the ground of his own carelessness though at the very time of its execution he might, had he seen fit, have advised himself fully as to the nature and legal effect of the act he was doing." "Without coercion and undue persuasion" includes, of course, positive fraud, because the argument in the opinion was that the facts there did not show positive fraud. And in *Moore* v. *Putts,* 110 Md. 490, it was said through Chief Judge Boyd: "That case, however, fully recognized the well established doctrine that an instrument under seal could be impeached and set aside for fraud or duress."

This point was raised as a question of evidence in *Wilson* v. *Pritchett,* 99 Md. 583, when, after saying, that the il- literacy of the party did not relieve him of the obligation to inform himself of the contents of the contract, by having some one, whose interests were not antagonistic to his own, read it to him before he signed it; and that he was estopped, by his failure to do so, from avoiding it on the ground that he was ignorant of its contents, and cited *Spitze* v. *B. & O.,* *supra,* to that effect, and then said: "But that obligation on his part did not prevent him from showing that he was in- duced to sign it through positive fraud."

And the exception is again recognized in *Paper Bag Co.* v. *Carr,* 116 Md. 541, where, after reciting the general rule with authorities, JUDGE BURKE, speaking for the Court, said: "But this rule is always subject to the condition that no fraud, or material misrepresentation, or deception was prac- ticed upon the party, under the influence of which he was lead to sign the contract. *Freedly* v. *French,* 28 N. E. Rep. 272; *Wilson* v. *Pritchett,* 99 Md. 583; *Russell* v. *Carman,* 114 Md. 25."

In 6 *Ruling Case Law* 633, Sec. 51, dealing with the stringency of the general rule, it is said: "The tendency of modern decisions appears to be toward the establishment of a more liberal rule. While there is always a sharp struggle in the courts between the desire to repress fraud upon the one hand, and on the other to discourage negligence and the opportunity and invitation to commit perjury, the rule seems to be settling down to learning all the facts, still scrutinizing closely, and even suspiciously, the claim of a party to such instrument that he had not read it. The fact is, that very thing frequently happens. If the opposite party has induced him by trickery, fraud or any kind of artifice not to read it, with the view to obtaining from him a paper which he could not otherwise have obtained, the right to prove these circum- stances and thereby establish the fact that he believed he was signing an entirely different paper, and so relieve him-

self from the obligation thereof, is undoubted. In an action by one party against the other to enforce the contract, a plea of fraud may be sustained even though the defendant may have been wanting in ordinary prudence in relying on the other's representations as to the tenor or contents of the writing."

In view of these authorities, and many more to the same effect throughout the country which could be cited, we must hold that the evidence of fraud, through which the appellant claims she was induced to sign the contract, should have been submitted to the jury, and that, therefore, there was error in granting the appellee's prayer. It follows that the first prayer of the appellant, in our opinion, contained a true statement of the law of the case as applicable to the facts and should have been granted. The facts attempted to be elicited by the questions that were objected to and are the subject of the three exceptions, were fully brought out in other portions of the same witness' testimony.

*Judgment reversed and new trial awarded.*
*with costs to the appellant.*