913 A.2d 10

Charles R. DASHIELL, Jr., et al.

v.

Charles E. MEEKS, Jr.

No. 27, Sept. Term, 2006.

Court of Appeals of Maryland.

Dec. 14, 2006.

Alvin I. Frederick (Jeffrey W. Bredeck, Eccleston & Wolf, P.C., Baltimore, on brief), for petitioners.

James K. MacAlister, Baltimore (Morton Edelstin, Edelstein, Radford & Perkins, Baltimore, on brief), for respondent.

Argued before BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

CATHELL, J.

This instant case arises from an attorney malpractice claim filed by Charles E. Meeks, Jr. ("Meeks"), respondent, against Charles E. Dashiell, Jr., Esquire ("Dashiell"), petitioner.[1] In

---

1. Meeks also filed suit against Dashiell's law firm, Hearne & Bailey, P.A. Both Dashiell and Hearne & Bailey, P.A. will be collectively referred to herein as "Dashiell."

1989, Meeks asked Dashiell to draft a prenuptial agreement to protect his family business in the event that his upcoming marriage to Melanie Davis ("Davis") did not last. According to Meeks, the initial draft that Dashiell reviewed with him contained a waiver of alimony provision, but the version ultimately signed by Meeks and Davis failed to contain such a provision. Meeks asserted that, at the earliest, he did not learn of this discrepancy until he separated from his wife on May 10, 2001. During divorce proceedings before the Circuit Court for Worcester County (held prior to the instant Wicomico County case), he asked that court to grant Davis rehabilitative alimony. Meeks also sought to have the divorce court declare the prenuptial agreement enforceable as executed. That court granted Meeks's request to pay Davis rehabilitative alimony in addition to granting his motion seeking to enforce the prenuptial agreement.

On October 24, 2003, Meeks sued Dashiell in the Circuit Court for Wicomico County alleging that Dashiell was negligent in omitting the alimony waiver provision from the prenuptial agreement and counseling Meeks to sign the prenuptial agreement without reading it. Dashiell moved to dismiss the complaint or, alternatively, for summary judgment on the grounds that the malpractice claim was barred by judicial estoppel or barred by the three-year statute of limitations. On May 14, 2004, the trial judge, treating the motion as a motion for summary judgment, ruled that judicial estoppel did not bar the claim, but that the statute of limitations expired three years after Meeks signed the agreement.

Meeks appealing to the Court of Special Appeals, argued that the trial court erred by not applying the discovery rule.[2] Dashiell argued that the claim was barred by the statute of limitations and, alternatively, that the trial court erred by not finding that the claim was barred by judicial estoppel. The

---

**2.** The discovery rule tolls the running of the statute of limitations until the potential plaintiff discovers or should have discovered the alleged injury, *Frederick Road Ltd. Partnership v. Brown & Sturm,* 360 Md. 76, 95, 756 A.2d 963, 973 (2000). We discuss the rule in more detail below.

appeal initially was heard by a three judge panel and then by the Court of Special Appeals sitting *en banc.* After argument and on its own motion, but prior to ruling on the issues before it, the Court of Special Appeals ordered that the entire record from the prior divorce proceedings in the Circuit Court for Worcester County, to include the transcripts of the hearing in the divorce case regarding the enforcement of the prenuptial agreement, be delivered to the Court of Special Appeals. The intermediate appellate court, however, after having obtained that record did not consider it and based solely on the record in the Wicomico County case, found that the trial court erred in ruling as a matter of law that the malpractice claim was barred by the statute of limitations.[3] The Court of Special Appeals declined to rule on the trial court's finding with respect to judicial estoppel. The Court of Special Appeals vacated the judgment of the Circuit Court for Wicomico County and remanded the matter to that court for further proceedings. *Meeks v. Dashiell,* 166 Md.App. 415, 890 A.2d 779 (2006). Dashiell filed a petition for writ of certiorari, which this Court granted on June 14, 2006. *Dashiell v. Meeks,* 393 Md. 245, 900 A.2d 751 (2006). Dashiell presented one question for our review:

> "Should an appellate court consider on its review portions of the record the appellate court ordered be obtained and supplemented into the record?"

We hold that there is no requirement that an appellate court must consider portions of the record from a prior case that it has ordered to be obtained as a supplement to the record in a subsequent case and that the Court of Special Appeals did not abuse its discretion by doing exactly that in this case. In so holding, we affirm the judgment of the Court of Special Appeals that: (1) the Circuit Court for Wicomico County erred as a matter of law in finding that Meeks's claim was barred by the statute of limitations; (2) the Circuit Court for

---

**3.** The dissent argued that the court should have considered the record from the divorce case. *Meeks v. Dashiell,* 166 Md.App. 415, 890 A.2d 779 (2006) (Deborah Eyler, J. dissenting).

Wicomico County, in a summary judgment context, did not abuse its discretion in denying Dashiell's motion based on judicial estoppel grounds; and (3) upon remand, in addition to any other defenses he may have, Dashiell is free to assert the claim of judicial estoppel if that claim is supported by a more fully developed record in the trial court as the case progresses.

## I. Facts

On October 24, 2003, Meeks filed a complaint in the Circuit Court for Wicomico County alleging that Dashiell was negligent for omitting the waiver of alimony provision from a prenuptial agreement he was employed to draft and for assuring Meeks that there was no need to read the prenuptial agreement before signing it when Dashiell knew or should have known that the agreement did not contain a waiver of alimony provision. Meeks had retained Dashiell to draft a prenuptial agreement between, his ex-wife, Davis and himself. Meeks and Davis signed the agreement on or about November 3, 1989, and were married on November 4, 1989. The original draft of the agreement allegedly contained a waiver of alimony provision, but the final agreement executed by Meeks and Davis did not contain that provision. Meeks further alleged that Dashiell told him there was no need to read the agreement before signing it. He also claimed that he did not know that the waiver of alimony provision was missing until, as a result of his separation from his wife on May 10, 2001, he finally read the prenuptial agreement.

After separating from Davis and learning of the missing waiver of alimony provision, Meeks filed for absolute divorce in the Circuit Court for Worcester County on February 7, 2002. In his complaint for divorce, he asked that his wife be granted rehabilitative alimony and the divorce court granted the request. On July 11, 2002, Meeks filed a Motion to Enforce the Antenuptial Agreement he signed which the divorce court granted on October 28, 2002. On June 11, 2003, the Circuit Court for Worcester County entered a judgment

for absolute divorce. Subsequently, Meeks filed the above described malpractice claim on October 24, 2003.

The Court of Special Appeals summarized what happened next:

"No answer was filed in the case. Instead, Dashiell's initial response to Meeks's complaint was a motion entitled 'Motion to Dismiss, or in the alternative, Motion for Summary Judgment.' Because the motion relied upon three attached exhibits that were not part of the complaint, we shall treat Dashiell's motion as a motion for summary judgment. *See* Maryland Rule 2–322(c).

"In the motion for summary judgment, Dashiell asserted that 'the material facts in this case are undisputed and judgment should be entered for the Defendants as a matter of law.' The motion set forth three alternative bases for entering judgment for Dashiell: '[1] The Plaintiff's claim is barred under the doctrine of judicial estoppel. [2] The Plaintiff's claim is also barred under the applicable statute of limitations. [3] The Plaintiff's cause of action fails since the Defendants did not cause the alleged damages.'

. . .

"In Dashiell's supporting memorandum, he emphasized that Meeks's Complaint for Divorce, filed in the Worcester County divorce action, included as one of its several prayers for relief a request that Davis 'be awarded rehabilitative alimony.' Dashiell further emphasized that, in the divorce action, Meeks had filed a motion asking the Circuit Court for Worcester County to enforce the antenuptial agreement dated November 3, 1989. There was no mention in Meeks's motion of any dissatisfaction on his part with the terms of that agreement. The docket entries from the divorce action reflect that after Meeks filed the motion to enforce the prenuptial agreement, the Circuit Court for Worcester County conducted a hearing and granted the motion. The docket entry for June 11, 2003, states: 'Court finds the

Antenuptial Agreement to be a valid agreement, and Grants the Motion to Enforce the Antenuptial Agreement.'

. . .

"At the hearing on Dashiell's motion for summary judgment, the motion judge took issue with Dashiell's contention that Meeks was attempting to pursue a remedy in the malpractice action that was clearly inconsistent with Meeks's successful efforts to enforce the prenuptial agreement, as executed, in the Worcester County divorce action. The following colloquy appears in the transcript from the hearing on Dashiell's motion for summary judgment:

[COUNSEL FOR DASHIELL]: In this court he says [the prenuptial agreement] wasn't my deal.

THE COURT: No, wait a minute. But I don't understand why his position is inconsistent.

[COUNSEL FOR DASHIELL]: It's inconsistent, Your Honor, because in Worcester County he says to the Court in his motion to enforce the settlement, this was my agreement.

THE COURT: He said I entered into a contract, and the contract did not provide for a waiver of alimony.

[ . . . ]

[COUNSEL FOR DASHIELL]: And he says to the Court, Judge, in Worcester County, this is my deal, specifically enforce it, honor it, meaning that it's the full and final agreement of the parties. It's everything that—

THE COURT: Right, it was the agreement of the parties. And the reason it was the agreement was because your client was negligent, is what he is saying, I don't know if that fact is true but—

[ . . . ]

THE COURT: Would the unilateral mistake of one party prevent the prenup[tial agreement] from being enforceable?

[COUNSEL FOR DASHIELL]: In a vacuum, no. But when the opposing party is saying, don't enforce it, it's not my deal, that wasn't it, which is what she's saying—

THE COURT: Well, no, but he is saying, you know, I wanted what I got plus a waiver of alimony.

[...]

THE COURT: So you are saying that he has to say, all right, I don't want anything in the agreement, I'll be a lot worse off, not just don't I have a waiver of alimony, I don't have the waiver with respect to property and everything, I have to take everything bad, instead of just what your client did wrong.

[COUNSEL FOR DASHIELL]: No. What I'm saying, Your Honor, is he has got to take a consistent position. If he tells the Court in Worcester that's my deal, that's what I intended—

[...]

THE COURT: No, no, he is saying that's the contract, the agreement I entered into with my wife. And in here he is saying that is the agreement I entered into with my wife, the reason I entered into it was because your client was negligent.

[...]

[COUNSEL FOR DASHIELL]: He says to the Court in Worcester, I had offer, acceptance and consideration on these terms. He says to this Court I didn't really mean to enter that agreement. That wasn't my agreement. That's the distinction.

THE COURT: He is not saying I didn't enter into that agreement. He is saying I entered into that agreement because your client was negligent. He is not saying that was not the agreement I entered into.

"After hearing further argument, the motion judge ruled from the bench:

THE COURT: All right.

I don't think there is any judicial estoppel. However, this agreement was signed 11 years before[.] I believe the Defendant is charged with knowing the contents of the document that he signed, and that his limitations would have begun [at] the time of the execution of the document. And the Court is going to grant the motion to dismiss based on limitations."

*Meeks v. Dashiell,* 166 Md.App. 415, 420–26, 890 A.2d 779, 782–86 (2006) (en banc) (footnotes omitted).

## II. Standard of Review

The Circuit Court for Wicomico County made two separate rulings with respect to Dashiell's motion for summary judgment. The trial court granted summary judgment based on the expiration of the statute of limitations, but it denied summary judgment on the basis of judicial estoppel.

With respect to the trial court's grant of a motion for summary judgment, the standard of review is *de novo. Rockwood Cas. Ins. Co. v. Uninsured Employers' Fund,* 385 Md. 99, 106, 867 A.2d 1026, 1030 (2005); *see also Walk v. Hartford Cas. Ins. Co.,* 382 Md. 1, 14, 852 A.2d 98, 105 (2004); *Todd v. Mass Transit Admin.,* 373 Md. 149, 154–55, 816 A.2d 930, 933 (2003). Prior to determining whether the trial court was legally correct, an appellate court must first determine whether there is any genuine dispute of material facts. *Converge Services Group, LLC v. Curran,* 383 Md. 462, 476, 860 A.2d 871, 879 (2004); *Jurgensen v. New Phoenix Atlantic Condominium Council of Unit Owners,* 380 Md. 106, 114, 843 A.2d 865, 869 (2004). Any factual dispute is resolved in favor of the non-moving party. *Jurgensen,* 380 Md. at 114, 843 A.2d at 869. Only when there is an absence of a genuine dispute of material fact will the appellate court determine whether the trial court was correct as a matter of law. *Rockwood,* 385 Md. at 106, 867 A.2d at 1030; *Converge Services Group,* 383 Md. at 476, 860 A.2d at 879; *Jurgensen,* 380 Md. at 114, 843 A.2d at 869.

■ Although, ordinarily, when there is no dispute of material fact, a trial court does not have any discretionary power when granting summary judgment it does, nonetheless, exercise discretion when affirmatively denying a motion for summary judgment or denying summary judgment in favor of a full hearing on the merits. We said in *Metropolitan Mortgage Fund, Inc. v. Basiliko,* 288 Md. 25, 415 A.2d 582 (1980):

"[W]hereas a court cannot draw upon any discretionary power to grant summary judgment, it ordinarily, does possess discretion to refuse to pass upon, as well as discretion to affirmatively deny, a summary judgment request in favor of a full hearing on the merits; and this discretion exists even though the technical requirements for an entry of such a judgment have been met.

. . .

■ "[W]e now hold that a denial (as distinguished from a grant) of a summary judgment motion, as well as foregoing the ruling on such a motion either temporarily until later in the proceedings or for resolution by trial of the general issue, involves not only pure legal questions but also an exercise of discretion as to whether the decision should be postponed until it can be supported by a complete factual record; and we further hold that on appeal, absent clear abuse (not present in this case), the manner in which this discretion is exercised will not be disturbed."

288 Md. at 28–29, 415 A.2d at 583–84 (citation omitted) (quotations omitted). In *Foy v. Prudential Ins. Co. of America,* 316 Md. 418, 559 A.2d 371 (1989), this Court stated:

"Although a trial court is allowed discretion to *deny* a motion for summary judgment in favor of a full hearing on the merits, a court cannot draw upon discretionary power to *grant* summary judgment.

. . .

■ "[O]rdinarily no party is entitled to a summary judgment as a matter of law. It is within the discretion of

the judge hearing the motion, if he finds no uncontroverted material facts, to grant summary judgment or to require a trial on the merits. It is not reversible error for him to deny the motion and require a trial."

316 Md. at 423–24, 559 A.2d at 373 (citing *Basiliko, supra).*[4] As indicated, a trial court may even exercise its discretionary power to deny a motion for summary judgment when the moving party has met the technical requirements of summary judgment. *Basiliko,* 288 Md. at 28, 415 A.2d at 583. Thus, on appeal, the standard of review for a denial of a motion for summary judgment is whether the trial judge abused his discretion and in the absence of such a showing, the decision of the trial judge will not be disturbed. *Foy,* 316 Md. at 424, 559 A.2d at 374; *Basiliko,* 288 Md. at 29, 415 A.2d at 584.

### III. Discussion

Before we may address the dispositive issue on this appeal, whether an appellate court must consider on its review portions of the record of a prior case the appellate court ordered to be obtained and supplemented into the record of a later case, we must first examine the findings of the Court of Special Appeals regarding the trial court's determinations with respect to Dashiell's motion for summary judgment.

### A. Statute of Limitations

By way of background, we return to the *en banc* majority opinion of the Court of Special Appeals:

"The prenuptial agreement that is the basis of Meeks's alleged legal malpractice claim against Dashiell was executed by Meeks on November 3, 1989. The complaint asserting the malpractice claim was filed on October 24, 2003. Dashiell asserted in the motion for summary judgment that 'Maryland law presumes that [Meeks] knew the contents of

---

4. While there may be a linguistic difference in the holdings of *Basiliko* and *Foy* as to the appropriateness of the exercise of discretion in the granting of such matters, the cases are consistent in that both cases hold that a trial court has discretion to deny the granting of motions for summary judgment.

the [prenuptial] contract he signed in 1989. The contract did not contain a waiver of alimony provision. Because thirteen years have passed from the date the contract was signed, and [Meeks] had knowledge of the lack of an alimony provision, this claim is barred under the applicable three-year statute of limitations.'

"In Meeks's affidavit filed in opposition to the motion for summary judgment, however, Meeks asserted, under oath: 'I first discovered that the waiver of alimony provision was not in the executed antenuptial agreement when I consulted with an attorney in 2001 regarding a divorce from my wife, [Davis].' Meeks further asserted in his affidavit that when he had, prior to the date of signing, reviewed a draft of the proposed prenuptial agreement, the draft 'contained a waiver of alimony provision'; that he 'was not made aware of any negotiations that occurred between the time [he] reviewed the draft of the antenuptial agreement and the execution of the final agreement that related to alimony'; and that '[p]rior to executing the antenuptial agreement, [Meeks] was not advised by [his] attorney, Charles R. Dashiell, Jr., or any other individual employed by Hearne and Bailey, P.A., that the waiver of alimony provision had been removed from the agreement.'

"The motion judge apparently discounted Meeks's sworn statement that he had no actual awareness that the waiver-of-alimony provision had been deleted by his attorney without Meeks's knowledge from the final draft of the prenuptial agreement. The motion court accepted Dashiell's argument, based upon *Merit Music v. Sonneborn*, 245 Md. 213, 221–22, 225 A.2d 470 (1967), that Meeks was presumed to know the contents of the document he signed. The motion court treated such presumed knowledge as sufficient to establish as a matter of law that Meeks was on inquiry notice of his potential malpractice claim the day he signed the document in question. Accordingly, the motion court ruled that Meeks was 'charged with knowing the contents of the document that he signed, and that his [statute of]

limitations would have begun [at] the time of the execution of the document.' "

*Meeks,* 166 Md.App. at 428–430, 890 A.2d at 787–88.

■■ Generally, it is the rule under Maryland contract law that, as between the parties to an agreement, a party who signs a contract is presumed to have read and understood its terms and that the party will be bound by them when that document is executed. *Holloman v. Circuit City Stores,* 391 Md. 580, 595, 894 A.2d 547, 556 (2006) citing *Walther v. Sovereign Bank,* 386 Md. 412, 444, 872 A.2d 735 (2005) ("If petitioners did not [read the agreement] before they signed the agreement, they have no persons to blame but themselves. As expressed earlier in our discussion, we are loathe to rescind a conspicuous arbitration agreement that was signed by a party who now, for whatever reason, does not desire to fulfill that agreement."); *Binder v. Benson,* 225 Md. 456, 461, 171 A.2d 248, 250 (1961) ("[T]he usual rule is that if there is no fraud, duress or mutual mistake, one who has the capacity to understand a written document who reads and signs it, or without reading it or having it read to him, signs it, is bound by his signature as to all of its terms.") (citations omitted); *McGrath v. Peterson,* 127 Md. 412, 416, 96 A. 551, 553 (1916) (" 'It would lead to startling results if a person, who executes *without coercion or undue persuasion,* a solemn release under seal, can subsequently impeach it on the ground of his own carelessness though at the very time of its execution he might, had he seen fit, had advised himself fully as to the nature and legal effect of the act he was doing.' " (quoting *Spitze v. Baltimore & Ohio R.R. Co.,* 75 Md. 162, 23 A. 307 (1892))).

■■ The principle represented by each of the cases cited above is distinguishable from the present malpractice claim for the purposes of determining when the statute of limitations began to run. Those cases all involved disputes between parties to a contract where one party was attempting to enforce a contract against the other party. *This case involves a negligence claim against an alleged tortfeasor who was not a party to the contract which is the subject of the*

*dispute.* Thus, even though a person is presumed to have read and understood the terms of a contract at the moment of execution, we agree with the Court of Special Appeals that this principle of contract law:

> "does not conclusively establish as a matter of law that the statute of limitations for a legal malpractice claim against the attorney who prepared the contract expires three years after the date the contract was signed. This is particularly so when, as alleged in this case, the attorney assures the client that the document is ready for the client's signature and advises the client to sign the document without rereading it."

*Meeks,* 166 Md.App. at 430, 890 A.2d at 788. We conclude, for the purpose of determining the accrual of the statute of limitations, that, in the context of this case, the Circuit Court for Wicomico County erred as a matter of law when holding that Meeks was charged with knowledge of the alleged malpractice at the time he signed the document. We, like the Court of Special Appeals, think the Circuit Court should have applied what is commonly referred to as the "discovery rule" in order to determine when Meeks was put on notice of his potential claim. We explain.

It is generally true that granting summary judgment for a defendant is appropriate when the statute of limitations governing the action has expired. *See* Maryland Code (1973, 2002 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article. This Court, however, has recognized the inherent unfairness of "charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury . . ." and we have adopted the discovery rule to determine the date of accrual of a cause of action. *Frederick Road Ltd. Partnership v. Brown & Sturm,* 360 Md. 76, 95, 756 A.2d 963, 973 (2000) (citing *Hahn v. Claybrook,* 130 Md. 179, 186–87, 100 A. 83, 85–86 (1917)). Chief Judge Bell, writing for the *Frederick Road* Court, explained the operation of the discovery rule and its impact on motions for summary judgment based on the expiration of the statute of limitations:

"The discovery rule tolls the accrual of the limitations period until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury. Thus, before an action is said to have accrued, a plaintiff must have notice of the nature and cause of his or her injury. *See, Pennwalt [v. Nasios], [ ]* 314 Md. [433] at 453, 550 A.2d [1155] at 1165–66 [ (1988) ] (holding that limitations do not begin to run until a plaintiff knows or reasonably should know the nature and cause of his or her harm.); *See also, United Parcel [Service v. People's Counsel for Baltimore County], [ ]* 336 Md. [569] at 579, 650 A.2d [226] at 231 [ (1994) ] (holding that 'a cause of action "accrues" within the meaning of § 5–101 when "the plaintiff knows or should know of the injury, its probable cause, and ... [the defendant's] wrongdoing...." ')(citing Hecht [v. Resolution Trust Corp.], [ ]* 333 Md. [324] at 336, 635 A.2d [394] at 400 [ (1994) ] ). Aware that the question of notice generally requires the balancing of factual issues and the assessment of the credibility or believability of the evidence, this Court in *O'Hara v. Kovens,* 305 Md. 280, 503 A.2d 1313 (1986), made clear:

> 'whether or not the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence, or to the fact that defendant so concealed the wrong that plaintiff was unable to discover it by the exercise of due diligence, is ordinarily a question of fact for the jury.'

*Id.* at 294–295, 503 A.2d at 1320. (citations and internal quotations omitted)."

*Frederick Road,* 360 Md. at 95–96, 756 A.2d at 973–74. Therefore, the discovery rule tolls the running of the statute of limitations and it is ordinarily a question for the jury or the ultimate factfinder as to whether the plaintiff failed to discover the cause of action because he failed to exercise due diligence or whether he was unable to discover it (and, as a result, unable to exercise due diligence) because the defendant concealed the wrong.

 In the case *sub judice,* Meeks alleged the following in an affidavit dated December 19, 2003: Dashiell reviewed with him a draft prenuptial agreement in 1989, Dashiell made changes to the agreement that were more favorable to his ex-wife without Meeks's knowledge, his attorney advised him to sign the document without reading it and, as a result of his reliance on Dashiell's advice, Meeks did not find out about the discrepancy in the prenuptial agreement until 2001. If Meeks can prove these allegations, the statute of limitations would not have begun to run until he discovered that the alimony waiver was missing in the final version of the prenuptial agreement he signed in reliance upon his attorney. Therefore, we find no reason to disturb the findings of the Court of Special Appeals, that (1) the Circuit Court for Wicomico County erred in ruling as a matter of law that the cause of action accrued on the date the prenuptial agreement was executed; and (2) there is a genuine dispute of material fact regarding when Meeks discovered the nature and cause of his injury.

### B. Judicial Estoppel

 Judicial estoppel is defined as "a principle that precludes a party from taking a position in a subsequent action inconsistent with a position taken by him or her in a previous action." *Underwood–Gary v. Mathews,* 366 Md. 660, 667 n. 6, 785 A.2d 708, 712 n. 6 (2001) (citing *WinMark Ltd. P'ship v. Miles & Stockbridge,* 345 Md. 614, 693 A.2d 824 (1997)). The purpose behind the doctrine of judicial estoppel was eloquently explained in *Kramer v. Globe Brewing Co.,* 175 Md. 461, 2 A.2d 634 (1938):

" 'If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them.

It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.' "

175 Md. at 469, 2 A.2d at 637 (quoting Melville M. Bigelow, *The Law of Estoppel*, 783 (Little, Brown & Co. 6th ed.) (1913) (citing *Ohio & M. Railway Co. v. McCarthy*, 96 U.S. 258, 24 L.Ed. 693 [ (1877) ] )). Before judicial estoppel may be applied, three circumstances must exist: (1) one of the parties takes a factual position that is inconsistent with a position it took in previous litigation, (2) the previous inconsistent position was accepted by a court, and (3) the party who is maintaining the inconsistent positions must have intentionally misled the court in order to gain an unfair advantage. *Standard Fire Ins. Co. v. Berrett*, 395 Md. 439, 910 A.2d 1072 (2006) (citing *Pittman v. Atlantic Realty Co.*, 359 Md. 513, 529 n. 9, 754 A.2d 1030, 1038–39 n. 9 (2000)). Thus, judicial estoppel applies when it becomes necessary to protect the integrity of the judicial system from one party who is attempting to gain an unfair advantage over another party by manipulating the court system.

 In the present matter, the Court of Special Appeals synthesized the relevant facts pertaining to judicial estoppel, stating:

"[I]t appears from the comments made by the motion judge during the hearing on the motion for summary judgment that the judge was not persuaded, based upon his review of only the documents in the motion court's file, that Meeks's claim of malpractice was irreconcilably inconsistent with Meeks's successful motion to enforce the executed antenuptial agreement in the divorce litigation in the neighboring county's circuit court. From our review of the exhibits that were before the motion court at the time of the hearing on the motion for summary judgment we cannot say that the motion judge committed legal error on this point, or that he

abused his discretion by refusing to grant Dashiell's motion for summary judgment.

"In his motion for summary judgment, Dashiell argued that Meeks's malpractice claims were inconsistent with the position Meeks had pursued during the Worcester County divorce litigation in two regards. (1) In Meeks's complaint for divorce, he specifically included among his prayers for relief a request that Davis 'be awarded rehabilitative alimony'; Dashiell asserted that it is inconsistent for Meeks to now allege in his malpractice complaint that, '[a]s a result of the negligence of [Dashiell], [Meeks] has been ... required to pay alimony.' (2) In the divorce proceedings, Meeks filed a Motion to Enforce Antenuptial Agreement, which was granted by the Circuit Court for Worcester County; but in the malpractice complaint, Meeks alleged that he did not intend to sign an antenuptial agreement which did not contain a waiver of alimony.

"Given the facts in the record at the time the motion judge ruled upon Dashiell's motion for summary judgment, it was not an abuse of discretion to deny Dashiell's motion that summary judgment should be granted for these reasons....

. . .

"At the argument on the motion for summary judgment, Dashiell's counsel appropriately conceded that a unilateral mistake by Meeks would not prevent the prenuptial agreement from being an enforceable agreement. The motion judge was not persuaded that a party whose attorney neglected to advise the client of a change to the final execution draft was limited to either rejecting the entire agreement or waiving the alleged error of the attorney. Upon weighing the value of the property settlement provisions against the possibility of an alimony award, it was not inconsistent for Meeks to take the position that, as between himself and Davis, the signed agreement was an enforceable contract, and also take the position that his attorney either mishandled the preparation of the final agreement or failed

to properly advise Meeks of the ramifications of signing the final version. . . .

. . .

"The documents before the motion judge, however, did not assert that the signed prenuptial agreement was contrary to the terms to which Davis had agreed. To the contrary, the exhibits filed with the motion for summary judgment and response supported a factual inference that the deletion was made at Davis's request during negotiations between counsel, but never communicated to Meeks. Accordingly, the motion judge did not abuse his discretion in refusing to grant Dashiell's motion on this basis. In further proceedings in the present case, however, Dashiell will have the opportunity to develop the facts surrounding this possible inconsistency in Meeks's factual assertions, and the court may revisit this issue as necessary."

*Meeks,* 166 Md.App. at 439–44, 890 A.2d at 793–96 (citations omitted).

Dashiell urges this Court, should we find that the record is to be considered from the divorce proceedings in the Circuit Court for Worcester County, to apply the doctrine of judicial estoppel. For the reasons stated below, we decline to consider the Worcester County record. Moreover, we see no independent reason to disturb the Court of Special Appeals' conclusion with respect to judicial estoppel:

"Based upon our review of the documents in the record that was before the motion judge at the time he ruled upon Dashiell's motion, we conclude that the motion judge did not abuse his discretion in denying Dashiell's motion to grant summary judgment based upon judicial estoppel. Without prejudice to Dashiell's right to continue to assert a claim of judicial estoppel upon a more fully developed record, we decline Dashiell's invitation to reverse the motion court's denial of the motion for summary judgment on that basis."

*Meeks,* 166 Md.App. at 436, 890 A.2d at 791–92. We agree. The trial judge, based on the record that was before him at

the time, did not abuse his discretion when denying the motion for summary judgment. Dashiell is, however, free to continue to assert a claim of judicial estoppel on remand and upon a more fully developed record.

### C. Judicial Notice and Appellate Review

We may now turn to the issue directly before this Court: "Should an appellate court consider on its review portions of the record the appellate court ordered be obtained and supplemented into the record?"

Dashiell urges that this is an exceptional case and, in the interests of justice, this Court should look outside the record of the proceedings in the Circuit Court for Wicomico County. He bases his argument on the following: (1) the case is exceptional because of the need for both the panel hearing and the *en banc* hearing in the Court of Special Appeals, (2) the two are closely related because the malpractice action stems from the divorce proceeding, and (3) the principals of judicial economy will be better served by deciding any unresolved issues in this Court then by remanding the matter to the Circuit Court.

Meeks argues before this Court that a full evidentiary hearing in the Circuit Court for Wicomico County is necessary because that court never had the entire record of the divorce proceeding before it when it ruled on summary judgment. Consequently, he states that considering the record at the appellate level for the first time would be unjust to him because he never had the chance to challenge the facts and circumstances of that record in a trial court context in the instant case.

The parties have not directed us to and we have not found any authority that compels an appellate court in this State to consider, or take judicial notice of, facts presented in a prior case not in the original record of the instant case, which it thereafter, ordered placed in the record of the instant case.

Generally, judicial notice may only be taken of "matters of common knowledge or [those] capable of certain

verification." *Faya v. Almaraz*, 329 Md. 435, 444, 620 A.2d 327, 331 (1993); *see also Smith v. State*, 388 Md. 468, 499, 880 A.2d 288, 306 (2005) (Harrell, J. dissenting). The latter category includes facts which " 'are capable of immediate and certain verification by resort to sources whose accuracy is beyond dispute.' " *Faya*, 329 Md. at 444, 620 A.2d at 331 (quoting Murphy, *Maryland Evidence Handbook*, § 1000(A)(2) (1989)). Maryland Rule 5–201 [5] governs the use of judicial notice with respect to adjudicative facts [6] and although it does not explicitly cover the present situation, it is

---

5. **"Rule 5–201. Judicial notice of adjudicative facts.**

(a) **Scope of Rule.** This Rule governs only judicial notice of adjudicative facts. Sections (d), (e), and (g) of this Rule do not apply in the Court of Special Appeals or the Court of Appeals.

(b) **Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) **When discretionary.** A court may take judicial notice, whether requested or not.

(d) **When mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) **Opportunity to be heard.** Upon timely request, a party is entitled to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) **Time of taking notice.** Judicial notice may be taken at any stage of the proceeding.

(g) **Instructing jury.** The court shall instruct the jury to accept as conclusive any fact judicially noticed, except that in a criminal action, the court shall instruct the jury that it may, but is not required to, accept as conclusive any judicially noticed fact adverse to the accused.

6. There are both adjudicative and legislative facts. We have previously distinguished the two:

"The difference between adjudicative and legislative facts is not easily drawn; Professor Davis says that adjudicative facts are facts about the parties and their activities, businesses and properties. They usually answer the questions of who did what, where, when, how, why, with what motive or intent while legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion."

*Montgomery County v. Woodward & Lothrop, Inc.*, 280 Md. 686, 711–12, 376 A.2d 483, 497 (1977) (citation omitted) (quotations omitted).

instructive. Initially, we note that Rule 5-201(f) permits judicial notice to be taken at "any stage of the proceeding." This has been correctly interpreted to mean that judicial notice may be taken during appellate proceedings. *See Lerner v. Lerner Corp.*, 132 Md.App. 32, 40, 750 A.2d 709 (2000); *Burral v. State*, 118 Md.App. 288, 295, 702 A.2d 781 (1997). Under Rule 5-201(a), the appellate courts of this State are exempt from mandatory provision of the Rule found in 5-201(d), which states that: "A court *shall* take judicial notice if requested by a party and supplied with the necessary information." (Emphasis added). Rule 5-201(c) is, however, applicable to Maryland's appellate courts; it states that "[a] court *may* take judicial notice, whether requested or not." (Emphasis added). Rule 5-201(c) is clearly discretionary in nature. Thus, under the Maryland Rules, there is no mandatory requirement for this Court or the Court of Special Appeals to take judicial notice of any such adjudicative fact, but both courts, if they choose to do so, *may* take judicial notice of adjudicative facts. Necessarily, our case law is consistent with the discretionary nature of the Rule. With respect to taking judicial notice of proceedings outside the record, as we are asked to do here, we have said:

> " 'The general rule undoubtedly is that a court will not travel outside the record of the case before it in order to take notice of proceedings in another case, even between the same parties, and in the same court, unless the proceedings are put in evidence; and the rule is sometimes enforced with considerable strictness. * * * But in exceptional cases, as high authority shows, the dictates of logic yield to the demands of justice, and the courts in order to reach a just result, will make use of established and uncontroverted facts not formally of record in the pending litigation.' "

*Fletcher v. Flournoy*, 198 Md. 53, 60–61, 81 A.2d 232, 235 (1951) quoting *Morse v. Lewis*, 54 F.2d 1027, 1029 (4th Cir. 1932). Only in exceptional cases, when the requirements of logic are overcome by the demands of justice, is it proper to exercise the discretionary power of an appellate court in this

State to look to a proceeding outside the record of the case before it.

 As a result of our determination that the Court of Special Appeals' decision not to review the Worcester County records was discretionary in nature, we will examine the intermediate appellate court's decision under an abuse of discretion review. Judicial discretion has been defined as " 'that power of decision exercised to the necessary end of awarding justice and based upon reason and law, but for which decision there is no special governing statute or rule. . . .' " *Jenkins v. College Park*, 379 Md. 142, 164, 840 A.2d 139 (2003) quoting *Goodman v. Commercial Credit Corp.*, 364 Md. 483, 491–92, 773 A.2d 526, 531–32 (2001) (citations omitted). We have also said that judicial discretion "is defined as the power of a court to determine a question upon fair judicial consideration with regard to what is right and equitable under the law and directed by reason and conscience to a just result." *Schneider v. Hawkins*, 179 Md. 21, 25, 16 A.2d 861, 865 (1940) citing *Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931). In the context of juvenile court, we have said that discretion has been abused when there is a showing that the juvenile court's actions were " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *In re Don Mc.*, 344 Md. 194, 201, 686 A.2d 269, 272 (1996) (quoting *State ex rel. Carroll v. Junker*, 79 Wash.2d 12, 26, 482 P.2d 775, 784 (1971)). In the criminal context, a court's exercise of discretion is not abused if it is:

> " 'done according to the rules of reason and justice, not according to private opinion; according to law, and not humour. It is to be, not arbitrary, vague, and fanciful, but legal and regular. And it must be exercised within the limit, to which an honest man competent to the discharge of his office ought to confine himself.' "

"*Wilhelm v. State*, 272 Md. 404, 438, 326 A.2d 707[, 728] (1974), quoting *Lord Halsbury, L.C., in Sharp v. Wakefield* [1891] A.C. 173, 179. Discretion is abused

'if exercised in a harsh, unjust, capricious and arbitrary way.' *Mathias [v. State]*, 284 Md. [22], [ ] 27, 394 A.2d 292,

[295 (1978) ] [ (]quoting *Jones v. State,* 185 Md. 481, 489, 45 A.2d 350[, 353] (1946)[) ]."

*Gonzales v. State,* 322 Md. 62, 72, 585 A.2d 222, 227 (1991). Generally, the standard is that absent a showing that a court acted in a harsh, unjust, capricious and arbitrary way, we will not find an abuse of discretion. There is no such showing here.

 The Court of Special Appeals explained why it chose not to consider the divorce court record:

"We have considered the option of undertaking our own independent review of the Worcester County divorce proceedings to analyze in more detail the degree of any inconsistency between the positions asserted by Meeks in that litigation and the claim he now asserts against Dashiell, but we have rejected that course of action for a number of reasons. First and foremost, the complete record of those proceedings was not available to, or considered by, the motion court in this case. Consequently, except for the five specific exhibits submitted by Dashiell and Meeks in connection with the motion for summary judgment, the records from the Worcester County divorce proceedings are not part of the record in this case. The divorce court's records were not even in the same courthouse as the one in which the motion was being argued, let alone part of the same court file.

. . .

"[T]he parties were represented by skilled litigation counsel who made a strategic decision to submit only five excerpts from the divorce action. Counsel for each party could have sought to have the entire court file from the Worcester County divorce action made available to the Wicomico County motion judge, but did not do so. It is not the proper function of an appellate court to override such tactical decisions and seek out additional evidence to supplement the record in order to support better arguments than those that were in fact raised and decided in the circuit court.

*Meeks,* 166 Md.App. at 445–47, 890 A.2d at 797–99 (citations omitted). The decision of the intermediate appellate court not to review the divorce record after it had ordered it supplemented into the malpractice claim record was within the bounds of reason and justice. The Court of Special Appeals' decision was not harsh, unjust, capricious, or arbitrary. It did not abuse its discretion.

We also decline to travel outside the record of the instant malpractice claim to examine the record of the prior divorce proceedings. This case is not of such exceptional circumstances that justice demands that *this Court* exercise its discretionary power and decide this issue based on facts that were not before the Circuit Court for Wicomico County. Just as the parties made a strategic decision not to place the entire record of the divorce proceedings before the Circuit Court for Wicomico County, Dashiell made a strategic decision, based on the disposition of the matter after the Court of Special Appeals issued its judgment, to petition this Court for relief rather than return to the Circuit Court to create a more fully developed record. While we understand Dashiell's strategic desire to have the matter resolved with finality before the State's highest Court, we are not a trial court. Were we to go outside the record of the malpractice claim in the name of justice and decide factual matters that could have been before the trial court, we would be circumventing the judicial system and, in so doing, denying the very justice the parties seek.

## IV. Conclusion

For the reasons stated above, we hold that there is no requirement that an appellate court consider portions of the record that it has ordered to be obtained as a supplement to the existing record. The Court of Special Appeals did not abuse its discretion. In so holding, we affirm the judgment of the Court of Special Appeals that, in the context of summary judgment: (1) the Circuit Court for Wicomico County erred as a matter of law in finding that Meeks's claim was barred by the statute of limitations; and (2) the Circuit Court for Wicomico County did not abuse its discretion by denying

**180**

Dashiell's motion for summary judgment on judicial estoppel grounds. Dashiell is free to assert the claims of limitations, judicial estoppel and any other defenses upon remand.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE DIVIDED BETWEEN THE PARTIES.

HARRELL, J., Dissents.

Dissenting Opinion by HARRELL, J.

For the reasons stated in Judge Deborah S. Eyler's dissent, speaking for the five dissenters in the Court of Special Appeals, *Meeks v. Dashiell,* 166 Md.App. 415, 448–481, 890 A.2d 779, 799–818 (2006), I dissent from the Majority opinion of this Court.